FREDERICK C. RYHINER

*v.*

JOSEPH FRANK *et al.*

*Filed at Mt. Vernon January 31, 1883.*

1. JUDICIAL SALE—*time within which to procure the deed.* Where land was sold on execution on August 10, 1871, and the sheriff's deed was not taken out until on December 21, 1878, under the act of March 22, 1872, which went into effect July 1, 1872, it was *held*, that the certificate of purchase became void, because the deed thereon was not made within five years from the expiration of the time of redemption, and the sheriff's deed thereon was a nullity, passing no title.

2. SAME—*notice to purchaser of what record shows.* Notice to a purchaser at a sheriff's sale under execution, of the existence of a deed of trust given by the execution debtor for the purchase money after the date of the judgment upon which the execution issued, will not, in a court of law, affect the rights of the purchaser, as the records would show such deed of trust, and also that it was subsequent to the date of the judgment, nor would it avail in equity, as the taking of the trust deed is a waiver of the vendor's lien.

3. LIMITATION—*retrospective effect.* A statute limiting the time of taking out deeds on a certificate of purchase at sheriff's sale, changing the time fixed by this court, and applying to sales made before its passage or before it took effect, if it gives a reasonable time for taking out such deed, is a valid law, taking away no vested right, but affecting and changing only the remedy.

4. JUDGMENT LIEN—*as against subsequent incumbrance.* A judgment in a court of record is a lien upon the defendant's land from its date, and the lien thereof will be prior to that of a deed of trust subsequently given on real estate by such defendant, though for the purchase money, and though the sheriff's deed to the purchaser on execution is not made until after the recording of the trust deed. The sheriff's deed, when made, relates back to the date of the judgment, and takes effect as of that date against intervening incumbrancers and purchasers.

5. VENDOR'S LIEN—*waiver by taking other security.* The taking of a trust deed by the vendor of land is a waiver of his implied lien for the purchase money, and such deed of trust then becomes the sole measure of the vendor's right in the land for the security of the payment of the purchase money by the vendee.

6. HOMESTEAD—*only in favor of householder.* It is not every person owning or occupying land that is entitled to a homestead in it, but only a "householder having a family." Without proof that a defendant in execution was such a person, no claim of exemption arises.

APPEAL from the Circuit Court of Effingham county; the Hon. THOMAS S. CASEY, Judge, presiding.

Mr. J. N. GWIN, and Mr. W. B. COOPER, for the appellant:

The Statute of Limitations as to the time of taking out a sheriff's deed did not run against the deed, as the judgment and sale were made prior to the passage of the act of 1872. *Rucker* v. *Dooley,* 49 Ill. 383.

A *bona fide* purchaser of property, who has failed to record his deed until after a judgment has been recovered against his vendor, but who records it prior to the sale under the

328          Ryhiner *v.* Frank *et al.*          [Jan.

Brief for the Appellees.    Opinion of the Court.

judgment, can hold it against the purchaser at the execution sale. *Davis* v. *Ownby,* 14 Mo. 170; *Valentine* v. *Havener,* 20 id. 133; *Stillwell* v. *McDonald,* 39 id. 282; *Porter* v. *McDowell,* 43 id. 93; *Read* v. *Owensby,* 44 id. 204; *Black* v. *Long,* 60 id. 81; *Chapman* v. *Sims,* 53 Miss. 154; *Pettingill* v. *Devlin,* 35 Iowa, 353

No difference exists between a purchase at private sale and one at a sheriff's sale. Notice to an agent or attorney is notice to principal. *Robinson* v. *Rowan,* 2 Scam. 429; *Williams* v. *Tatnall,* 29 Ill. 553.

Messrs. Wood Brothers, and Messrs. Gilmore & White, for the appellees:

The certificate of purchase of F. W. Crœnbold, assigned to plaintiff, and the sheriff's deed thereon, were null and void. Rev. Stat. chap. 77, sec. 30; Potter's Dwarris on Statutes and Const. 73, 471-2; *Brunson* v. *Kinzie,* 1 How. 316; *Green* v. *Biddle,* 8 Wheat. 75; *Story* v. *Furman,* 25 N. Y. 233; *Morse* v. *Gould,* 11 id. 281.

The title of Frank was prior and superior to that of plaintiff. *Harris* v. *Cornell,* 80 Ill. 54; *Hernandez* v. *Drake,* 81 id. 34; *McHaney* v. *Schenk,* 88 id. 357.

His rights under his deed, by relation, were fixed when the judgment lien attached. Notice could not destroy rights already accrued.

Mr. Justice Sheldon delivered the opinion of the Court:

This was an action of ejectment, by Ryhiner, against Frank, to recover possession of lots 1 and 2, in block 1, in central Effingham, wherein there was judgment in favor of the defendant, and the plaintiff appealed.

One Newbanks was the common source of title. On January 20, 1875, John G. McCoy became the purchaser of the lots at a trustee's sale of them, under a trust deed thereof,

executed by Newbanks on December 2, 1872, McCoy receiving the trustee's deed. On March 30, 1875, McCoy and wife executed a trust deed to A. F. Bandelier, trustee, to secure the payment of $1416.35, under which trust deed, Ryhiner, the plaintiff, became the purchaser of the lots on September 20, 1878, at a trustee's sale of them, made by Bandelier, the trustee. This trustee's deed is one source from which plaintiff claims title. The other source is a judgment against Newbanks in favor of one Crœnbold, rendered on March 6, 1871, which was prior to Newbanks' said trust deed of December 2, 1872, an execution sale of the lots under the judgment, on August 7, 1871, to Crœnbold, and a sheriff's deed of them, of date December 21, 1878, to Ryhiner, the plaintiff, assignee of the certificate of purchase. Defendant claims title under a judgment in favor of Frank Brothers, against McCoy, rendered March 18, 1875, an execution sale thereunder of the lots to Frank, the defendant, on December 11, 1875, and a sheriff's deed of the lots to him, made on August 2, 1878.

Plaintiff's claim of title under the Crœnbold judgment against Newbanks evidently must fail. His sheriff's deed thereunder, dated December 21, 1878, was based on the sheriff's sale made August 10, 1871, such sale having been seven years, three months and upward, prior to the taking of the deed, and five years, ten months and upward, from the expiration of the time of redemption, it having expired November 10, 1872. The statute approved March 22, 1872, and which went into effect July 1, 1872, provides that the purchaser of real estate at execution sale shall be entitled to a deed at any time within five years from the expiration of the time of redemption, and if the time of redemption should have elapsed before the taking effect of the act, that a deed might be given within two years from the time the act took effect; and the statute provides further, that when such deed shall not have been taken within the time limited by the act,

the certificate of purchase shall be null and void. (Laws, 1871-2, p. 510, sec. 30.) The sheriff's deed not having been taken within the time limited by the statute, the certificate of purchase on which the deed was given became null and void, and the deed is of no effect.

The objection is not valid that the statute fixes a limitation for taking out the deed, different from that declared by this court in *Rucker* v. *Dooley*, 49 Ill. 383, and that the judgment and sale under it were prior to the passage of the statute. The statute was one of limitation, and affected only the remedy. It took away no vested right, and, like all other statutes of limitation, was free from objection on this score, where a reasonable time, as was the case here, is left for the pursuit of the remedy. It was surely competent for the legislature to change a time of limitation which had previously been declared by the court.

There is a like failure to establish title in the plaintiff under the trustee's deed of Bandelier to him. The deed of trust under which that trustee's deed was made, was executed by McCoy to Bandelier, trustee, on March 30, 1875. But the judgment against McCoy, in favor of Frank Brothers, under which defendant claims, was rendered previous to that date, viz., on March 18, 1875, and so was a lien upon the lots from and after that time, making it a prior lien to the incumbrance of the trust deed executed March 30, 1875; and although the sheriff's deed to the defendant under this McCoy judgment was not executed until August 2, 1878, yet it related back to the date of the judgment, and took effect as of that date against the subsequent deed of trust of McCoy, and the trustee's deed thereunder, making it a paramount title to the latter.

A point is made against defendant's claim of title under the McCoy judgment, upon the fact that at the time of the execution sale, notice was given that Ryhiner, the plaintiff, had a trust deed on the premises, given by McCoy to secure

the purchase money, and the sale was forbidden. This was no more information, except as to purchase money, than the record of the deed of trust gave. The purchaser at the execution sale knew from the record that McCoy had given a deed of trust on the premises, but he saw that it was subsequent to the judgment, and therefore subordinate thereto. The added information the notice gave, that the deed of trust was to secure the purchase money, did not avail anything, as we see. We do not apprehend that there could be any going back to the time of McCoy's purchase of the lots on January 20, 1875, and asserting a lien on the premises from that time as a vendor's lien for the purchase money, but that the taking of the trust deed would be a waiver of the implied vendor's lien, and that such deed would be the sole measure of the vendor's right in the land for the security of payment of the purchase money. Besides, such a notice, given after a judgment rendered, would not, we conceive, affect the lien of the judgment which arose upon its recovery, and, at most, the notice was but of an equity with respect to the land, which would avail nothing in a court of law against the legal title in an action of ejectment.

It is set up, too, that there was a homestead estate in McCoy. It is not every person owning and occupying land that is entitled to a homestead in it, but only, in the language of the Homestead law, "every householder having a family." There is no evidence whatever in the record of McCoy being such a person.

We think the judgment right, and it is affirmed.

*Judgment affirmed.*