LYDIA BRADLEY

*v.*

H. W. LIGHTCAP.

*Opinion filed April 24, 1903.*

1. MORTGAGES—*extent of right to possession under trustee in deed of trust.* The right of one whose debt is secured by a trust deed to possession under the trustee ceases when the trust deed ceases to be a lien upon the property, as in case of foreclosure and sale.

2. SAME—*possession after decree and sale is not under the trust deed.* After foreclosure of a trust deed and a sale of the premises the rights of the one secured by the deed are merged in the decree and sale, and her possession after the decree and sale is not possession under the trust deed, although so begun originally.

3. SAME—*equity cannot aid party who fails to take out deed upon certificate of purchase.* One who fails to take out a deed upon her certificate of purchase at a foreclosure sale within the time required by the statute has no rights which equity can protect, notwithstanding she has had continuous possession since before the entry of the foreclosure decree.

4. SAME—*existence of an unpaid balance after sale does not extend the lien of the mortgage.* The existence of an unpaid balance after a foreclosure sale does not operate to extend the lien of the mortgage, since the force of the mortgage as a lien is expended when the decree is entered and the sale made.

5. SAME—*mortgagor's title is not lost by failure to redeem.* The legal title of a mortgagor remains in him until the execution of a deed, and hence if the purchaser at the foreclosure sale fails to take out a deed within the time required by law, the legal title remains in the mortgagor or his grantee, notwithstanding he failed to redeem.

6. SAME—*holder of a certificate of purchase has no right to possession.* The holder of a certificate of purchase at a foreclosure sale has no right to possession under the law, nor does the certificate itself convey any title.

7. LIMITATIONS—*title acquired by limitation is available for purposes of attack.* One having title to land under a statute of limitations may maintain an action against one who has lost title to the land by the same statute.

8. REAL PROPERTY—*legal and equitable title cannot be permanently separated except by trust.* In the absence of an express active trust the legal title and the equitable title to land cannot be permanently separated.

9. ESTOPPEL—*what is essential where silence is the ground of estoppel.* Where silence is the ground of estoppel it is essential that the

party claimed to be estopped shall have knowledge of the facts and the other party be ignorant of the truth, and be misled into doing something he would not have done except for such silence.

HAND, BOGGS and WILKIN, JJ., dissenting.

APPEAL from the Circuit Court of Fulton county; the Hon. G. W. THOMPSON, Judge, presiding.

W. W. HAMMOND, and CHIPERFIELD & CHIPERFIELD, for appellant.

WALLACE & LACEY, H. W. MASTERS, and GEORGE B. FOSTER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, H. W. Lightcap, brought five suits in ejectment in the circuit court of Mason county against tenants of the appellant, Lydia Bradley. Upon changes of venue the suits were transferred to Fulton county, where they were consolidated by agreement and appellant was substituted as defendant. The consolidated suit was for the recovery of six hundred and eighty acres of farm lands. Upon a trial before the court there was a finding and judgment in favor of appellant. Appellee brought the case to this court by appeal, and the judgment was reversed and the cause was remanded to the circuit court for further proceedings in accordance with the views expressed in the opinion then filed. (*Lightcap* v. *Bradley*, 186 Ill. 510.) The cause was re-instated in the circuit court and was again tried, resulting in a judgment against appellant. She took a new trial as provided by the statute, and then filed the bill in this case to enjoin the further prosecution of the ejectment suit. A demurrer was sustained to the bill, and appellant having elected to stand by the bill it was dismissed for want of equity, and she appealed.

The substantial averments of the bill are as follows: That on June 30, 1867, complainant was the owner of a

mortgage given by Thomas B. Breedlove on twelve hundred acres of land in Mason county, including the six hundred and eighty acres involved in the ejectment suit, to secure $19,616; that Breedlove and wife conveyed the whole premises, subject to the mortgage, to Benjamin S. Prettyman, who on August 13, 1868, conveyed the six hundred and eighty acres to Absalom McCune, taking from McCune a trust deed on the same to E. G. Johnson, as trustee for complainant, to secure the payment of three notes for the sum of $5000 each, with interest at ten per cent, due in one, two and three years from date; that Prettyman delivered said notes and trust deed to the agent of complainant in part payment of the Breedlove mortgage and she released said Breedlove mortgage; that on November 13, 1868, McCune and wife re-conveyed the six hundred and eighty acres to Prettyman; that nothing was paid on the McCune notes and no taxes were paid on the land, and in 1871 she investigated and found the lands to be swampy and worthless, vacant and unoccupied; that she took possession and redeemed from tax sales and paid the current taxes, and at the March term, 1872, filed her bill in the circuit court of Mason county against Prettyman, McCune and others, alleging that she had been induced to accept the McCune notes by fraudulent misrepresentations as to the value of the lands, and praying the court to set aside the release of the Breedlove mortgage and foreclose the same upon the whole twelve hundred acres; that while said bill was pending, in the summer of 1872, complainant personally entered on said lands and employed Allison Breedlove to hold and look after the same for her, and put him in charge thereof, to rent them for pasture and cut hay from them; that said Breedlove took and held active possession of the property, putting up fences as they were needed to keep in stock, and cutting and selling hay, and continued in actual possession until 1878, when complainant leased the lands to John Coddington; that she

gradually reduced the lands to cultivation and joined in forming a drainage district, by which they were thoroughly drained and became of great value as farming lands; that the bill filed in the circuit court was contested by Prettyman and was pending until 1879, when a decree adverse to complainant was rendered, decreeing the foreclosure of the McCune trust deed upon the six hundred and eighty acres instead of the Breedlove mortgage on all the lands; that the lands were sold under the decree by the master in chancery and were struck off to complainant for $10,000, leaving a deficit due from McCune of $21,000, which has never been paid; that the time allowed for redemption from the sale expired January 27, 1881, and no redemption was made; that she did not take out a deed on the certificate of purchase, but continued in the actual, adverse possession of the lands, and was in such possession when she filed the bill in this case; that after the expiration of the time for redemption she expended about $5000 in the drainage district, about $5000 in improvements and over $5000 in taxes on the property; that the trustee, E. G. Johnson, died intestate in June, 1885, and on June 11, 1894, his heirs sold the lands at public sale, after notice as provided for in the trust deed, and they were struck off to complainant for $35,000, and said heirs-at-law conveyed the same to her in conformity with the power in the trust deed, and that on November 30, 1894, there was put on record a quitclaim deed of said lands from Benjamin S. Prettyman to the defendant, purporting to have been executed on September 4, 1893. The bill gives the history of the ejectment suit, and alleges that complainant has fully presented her defense at law and has no remedy by the rules of law, and can only have relief in equity. The prayer of the bill is, that the defendant be permanently enjoined from further prosecuting the action of ejectment or asserting ownership of the lands or entering upon or taking possession thereof; that he be required to convey to

complainant all his right, title and interest in the same, and that her right to the lands may be confirmed and established by a decree of the court.

In seeking a reversal of the decree of the circuit court, counsel say that they present and rely upon the following four propositions:

"(1) Complainant entered into possession of the premises as equitable mortgagee, and is entitled to retain possession until she has received satisfaction of her debt.

"(2) Complainant has equitable title to the premises, the title having been conveyed to Johnson for her use, as the owner of the debt, her possession having been taken to enforce the conditions of the trust, the foreclosure having determined her equitable title and right to have the premises sold to satisfy her debt, the sale and subsequent expiration of the period of redemption having given her a right to demand the conveyance of the legal title. Possession with absolute right to have the legal title is equitable title. Having once acquired this, and never forfeited or conveyed it, complainant is the equitable owner.

"(3) Defendant is estopped to claim the premises. From August, 1872, to July 13, 1895, he and his grantor, having then all the title they claim now, stood by and witnessed the development of the premises from a swamp, worth, at most, $6800, to valuable farms, worth, at least, $40,000, without asserting their claim.

"(4) The statute of 1872 is unconstitutional in so far as it declares complainant's certificate null and void. She is entitled to the benefit of the limitation laws as they were at the date of her mortgage, and to be judged by the law as then promulgated by the courts."

The fourth of these propositions has already been directly disposed of by decisions adverse to it in *Ryhiner* v. *Frank*, 105 Ill. 326, and also in *Bradley* v. *Lightcap*, 201 id. 511, on the second appeal in the ejectment suit. The limitation act of 1872 being valid and constitutional, is equally binding upon the court in this case as in the

action at law. Furthermore, if that act, which limits the life of a certificate of purchase and the rights of a purchaser thereunder to five years after the expiration of the period of redemption, were unconstitutional, or if the construction given to it rendered it unconstitutional, a defense upon that ground would be complete and adequate at law, and the unconstitutionality of the act would be no ground for a bill in equity. Complainant could not maintain her bill to have that question determined, since the circuit court, in the action of ejectment, would have full power to pass upon it and award to complainant all her rights. The constitutionality of the statute is now beyond question, and the only duty of the court is to enforce it according to its terms. Courts do not hesitate to execute the legislative will as expressed in statutes of limitation, nor do they try to demonstrate a hidden meaning or intention not expressed in the statute or contrary to its terms, for the purpose of defeating it. Mr. Justice Story, speaking of former efforts of that kind, said in *Spring* v. *Gray*, 5 Mason, 505: "Happily that period has passed away, and judges now confine themselves to the more appropriate duty of construing the statute rather than devising means to evade its operation."

The language of this statute is clear and unambiguous. Plainer terms could not have been employed for the purpose of setting bounds to the rights acquired by a certificate of purchase and limiting them to five years after the period of redemption. The statute was so construed in *Peterson* v. *Emmerson*, 135 Ill. 55. The court, in the absence of express legislation on the subject, had formulated in *Rucker* v. *Dooley*, 49 Ill. 377, an equitable rule based upon the analogies of the law, and it was urged upon the court that equity might order a conveyance based on a foreclosure sale after the certificate was barred. The court, speaking by Mr. Justice BAKER, said (p. 60): "But this rule was abrogated by the legislative enactment of 1872, not only in respect to the period of

limitation, but also by the provision that if a deed was not taken out within the time limited the certificate should be null and void. It is sticking in the bark to say that, notwithstanding the certificate is null and void, yet the sale which it was given to evidence has such vitality and force that a court may decree, by virtue thereof, the peremptory and absolute transfer by its officer of the property and title of one person to another and different person. Such action on the part of the court is a virtual annulment of the mandate of the statute and an infringement of vested legal rights." In that case the purchaser asking relief was in possession. The statute was enacted because the legislature were not satisfied with the limitation fixed by the court in *Rucker* v. *Dooley,* either in respect to the period of eight years and three months, or the power of a court to give effect to the certificate after that time, within twenty years. If they had been satisfied with the rule of the court in either respect they would not have changed it in both. The statute fixed the limitation at five years, and abrogated the rule that the purchaser should have any right after that time, by declaring that the certificate should be null and void. The court had not annexed any qualification to its rule respecting possession, and no exception on that ground was incorporated in the statute. Some statutes of limitation fix limits for the commencement of actions for the possession of real estate, and one who is in possession is not subject to such limitation because he could not bring an action and already has what would be gained by a suit for possession. An argument that such a statute does not apply to one in possession is without force in the construction of a statute like this one. The effect of possession as notice, or as relating to the doctrine of *laches* in courts of equity, has no relation whatever to the question.

There is nothing, in principle, in this statute or this case differing from any other statute of limitations or

any case where substantial rights are lost under such a statute. When the complainant purchased the lands she was engaged in enforcing the remedies given to her by the law. The statute under which she purchased provided exactly what her purchase should be, what she should obtain by it, within what time she would be entitled to receive the title, and after what time the certificate of purchase would become null and void and all her rights under the purchase would cease. The statute gave her a right to receive the amount of her bid, with interest in case of redemption, and in case there was no redemption, to receive a deed within five years after the expiration of the period of redemption, and declared that if she did not take out the deed within that time the certificate should be null and void. If she failed to observe the requirements of the statute the fault is solely hers, against which equity is powerless to relieve her. The statute does not transfer any right or title granted by the certificate of purchase or divest complainant of it, but it fixes, in definite terms, what she purchased. The ultimate effect of statutes of limitation, generally, is to extinguish rights, and the courts have not hesitated to enforce such statutes where the effect is to transfer title from the true owner. When the bar of the statute has become absolute it is just as available for attack as for defense, and in case of disseizin by the paramount owner the title acquired by the bar may be asserted against him. One having no other title to land except under a statute of limitations may maintain his action against the one who has lost title by the same statute. *McDuffee* v. *Sinnott*, 119 Ill. 449; *Faloon* v. *Simshauser*, 130 id. 649; *Illinois Central Railroad Co.* v. *Moore*, 160 id. 9.

Under the first of the propositions of counsel above stated, they insist that complainant is a mortgagee in possession,—and if that were so it would be a good defense at law. They say that, inasmuch as the trustee, Johnson, held title for her benefit and she entered into

202—11

possession, although her certificate of purchase became null and void and the rights given to her as a purchaser ceased, her former status as a mortgagee in possession remains, and she is entitled to be considered in a court of equity as an equitable mortgagee in possession. The bill alleges, in a general way, that she took possession of the lands in 1871 and filed her bill to the March term, 1872, but alleges as a fact that while the bill was pending, in the summer of 1872, she personally entered on the lands and took possession and put an agent in charge of them. The bill is to be construed most strongly against the pleader, and it shows that she took actual possession after she had filed the bill. But that question is immaterial in this controversy. She had the right of a mortgagee to the possession of the lands under the trustee and could have recovered such possession in his name for her benefit, but such right to possession ended when the land was freed from the lien of the trust deed. The title in the trustee was only for the purpose of obtaining satisfaction of the notes out of the lands. (*Lightcap* v. *Bradley,* 186 Ill. 510; *Ware* v. *Schintz,* 190 id. 189.) After condition broken she might pursue all the different remedies allowed by the law until satisfaction was obtained by one or the other, but when a decree of foreclosure was entered and the land was sold, the security had been appropriated towards the satisfaction of the debt and all her rights in the land merged in the decree and sale. (*State Bank* v. *Wilson,* 4 Gilm. 57; *Wayman* v. *Crozier,* 35 Ill. 156; *Seligman* v. *Laubheimer,* 58 id. 124; *Kelgour* v. *Wood,* 64 id. 345; *United States Mortgage Co.* v. *Gross,* 93 id. 483; *Ogle* v. *Koerner,* 140 id. 170; *Davis* v. *Dale,* 150 id. 239; *Walker* v. *Warner,* 179 id. 16; *Lightcap* v. *Bradley,* 186 id. 510.) After the sale the trustee had no title, and nothing remained of the indebtedness except the personal liability of McCune. The title that the trustee had was only for the purpose of enforcing the provisions of the trust deed, and that having been done by the court, his powers,

rights and duties were at an end. It is true, that during the period of redemption the court might have appointed a receiver to hold possession and apply the rents and profits on the deficit; but that is an equitable remedy in the nature of an equitable execution, and it was not done. If a foreclosure sale ripens into title it relates back to the execution of the mortgage and conveys all the title which the mortgagor then had, so as to cut off all subsequent encumbrances. But when the decree was entered and sale made the trust deed had expended its force. In *Smith* v. *Smith*, 32 Ill. 198, the court said (p. 202): "If the party elected to sell under the power or to foreclose in chancery, he could only sell or foreclose for the amount then due according to the terms of the mortgage; and this, of necessity, would be a release of the security for the amount not due." In *Rains* v. *Mann*, 68 Ill. 264, it was held that a foreclosure for a part of a debt released the lien of the mortgage for the balance. If Prettyman or a judgment creditor had redeemed, he would have held the title to the land discharged of the trust deed and all claims of the complainant, although there was an unpaid balance due from McCune. The existence of such an unpaid balance did not give any right to enforce the mortgage lien against the same property a second time. If another person than the complainant had purchased at the sale and obtained possession we apprehend that no one would say that he was a mortgagee in possession, and it cannot be different merely because she was the purchaser. The sale created a new relation, in no manner affected by the fact that complainant had been the party secured by the trust deed, but dependent upon the statute, which permitted any person to become the purchaser and admitted all as bidders on terms of absolute equality.

The second proposition is, that the complainant has equitable title to the premises through the trust deed, the sale and the expiration of the period of redemption,

which gave her a right to a master's deed.   It is argued
that after the expiration of fifteen months the right of
redemption of Prettyman and his creditors was gone,
and that right being barred he had no title, but that the
complainant is the equitable owner, although the certifi-
cate became null and void.   If the title of Prettyman
passed out of him at the expiration of the period of
redemption it must have gone somewhere.   It was not
*in nubibus,* and it did not go to the complainant or any
other person.   The certificate of purchase conveyed no
title to the complainant.   *Johnson* v. *Baker,* 38 Ill. 98;
*Rockwell* v. *Servant,* 63 id. 424; *Huftalin* v. *Misner,* 70 id. 55;
*Hays* v. *Cassell,* id. 669.

In *Whiting* v. *Butler,* 29 Mich. 122, the four justices
were divided in opinion and the judgment was affirmed
under the statute.   Three opinions were delivered by dif-
ferent justices, and Mr. Justice Christiancy concurred
in the opinion delivered by Mr. Justice Cooley.   There
was a sale on execution of an interest in certain lands
and a subsequent sale of the same interest on another
execution.   Those justices were of the opinion that the
title under the second sale was paramount, and that
while it was true that the execution debtor's title after
the expiration of the period of redemption would have
been a mere legal title, with the whole equitable right
in the purchaser, such title did not terminate with the
failure to redeem, but would continue, either at the will
or through the mere inaction of the purchaser at the
sale, indefinitely; that the owner had something very
much beyond the mere right to redeem; that he had the
legal title, and might sell and convey it, mortgage and
lease the premises and defend his possession, and those
rights would not be forfeited or lost by failure to redeem,
and that the purchaser's right to the premises would
only be perfected so as to divest the legal title and en-
able the purchaser to demand possession when the sale
should be carried into effect by the execution of a deed.

The title must remain in the original owner until it passes out of him by the execution of a deed; and this is a title for all beneficial purposes. The complainant had no right to the possession, the beneficial use or the rents and profits, as purchaser or by virtue of the certificate, and the court would have had no power to award possession to her. (*Bennett* v. *Matson*, 41 Ill. 332; *Myers* v. *Manny*, 63 id. 211.) In *Cochran* v. *Fogler*, 116 Ill. 194, it was held that a purchaser was not entitled to possession until he had obtained a master's deed and complied with the terms of the decree by producing the deed and a certified copy of the order confirming the sale, and before that he could not call upon the mortgagor to surrender possession. The complainant's decree, under which she purchased, (a copy of which is annexed to the bill,) provided for the execution of a deed to the purchaser in the usual way, and that upon the execution and delivery of the master's deed the purchaser should be let into the possession of the premises conveyed to him, and that upon the production of the master's deed of conveyance and a certified copy of the order of the court confirming the sale, the person in possession should surrender the possession thereof to the grantee. Complainant had no right to the possession after the sale by virtue of the law, and her bill alleges none by virtue of any agreement. It is true, as was said in *Whiting* v. *Butler*, *supra*, that one who is entitled to a deed of premises has an equitable right in them; but that equitable right arises out of the fact that such person is entitled to the deed. In *Wright* v. *Douglass*, 2 N.Y. 373, the interest of a purchaser at execution sale was levied on by writ of attachment. There was a judgment in the attachment suit and a sale and a deed was executed, and it was held that the purchaser at the execution sale had an interest in the premises, and that the sale on attachment was at least equivalent to the assignment of the certificate. A sheriff's deed was executed under the execution sale, and the interest, legal

and equitable, of the purchaser at that sale was bound by the attachment. In *Ketchum* v. *Schicketanz*, 73 Ind. 137, the rights of a wife were involved. In Indiana a surviving wife is entitled to one-third of all lands in which her husband had any equitable interest at the time of his death, and the inchoate interest vests absolutely in her when such lands are sold and conveyed away from him under some judicial proceeding, the same as at his death. Marie Schicketanz was the wife of Jacob Schicketanz, and he had a certificate of purchase under a decree of foreclosure. He assigned it to his son, George, in fraud of creditors and of the Bankrupt act, and George obtained the deed. Jacob being adjudged a bankrupt, the assignment to the son was set aside and a conveyance to the assignee in bankruptcy was ordered. It was held that in legal contemplation the lots conveyed were a part of Jacob's estate, and that the conveyance to the assignee in bankruptcy was under a judicial proceeding, so that one-third vested in the wife. In these cases the party who was held to have an interest in the lands was entitled to a deed, and the deed was executed. After the expiration of the period allowed for redemption the complainant in this case became entitled to a deed, and that right continued for five years, during which time she might have obtained a deed, but when that time expired and her certificate of purchase became null and void, the only ground for holding that she had equitable title to the premises ceased to exist.

This court has repeatedly held that the holder of a certificate of purchase barred by the statute has no interest, either at law or in equity. It was so held in *Peterson* v. *Emmerson, supra;* and in *Seeberger* v. *Weinberg*, 151 Ill. 369, where a certificate of purchase had become void under the statute, it was held that the holder had no remedy which he could assert upon the certificate, as that had become a nullity, and he could not enforce any remedy on the original mortgage, as that remedy had been com-

pletely exhausted by the foreclosure and sale. The court said (p. 380): "Whether the lapse of time is to be given the effect of extinguishing his right or of merely barring his remedy, he has no further title or interest in the premises described in the certificate, which either he or his grantee can enforce, either at law or in equity." *Brown* v. *Ridenhower*, 161 Ill. 239, was a case like this, where the complainants, holding under a regular series of conveyances from the purchaser at a special commissioner's sale under a decree of foreclosure, were in possession and filed their bill to set aside as clouds upon their title the deeds made by heirs of the original mortgagor. It was held that the complainants had no interest in the premises which could be enforced in equity.

There is no pretense that complainant is entitled to the legal title or to a conveyance of it, but the claim is that two estates are to run along, side by side, permanently in this land, the legal title in the defendant and the equitable title in the complainant. We have been referred to no authority which holds that in the absence of an express active trust the two estates can be permanently separated in that way. In the case of express passive trusts the use is executed by the statute and the legal title transferred to the person who has the beneficial estate, and the general rule is, that wherever one has an equitable estate and there is no active trust he is entitled to a transfer to him of the legal estate. In this case there is no trust, expressed or implied, resulting or constructive. Defendant's title is a perfectly legal title, and not a mere cloud to be canceled and removed. It has not become void, but the certificate of purchase under which complainant claims is void. Complainant has no title to the premises under her purchase and the bill shows no right to possession, and we do not see how it can be said she has an equitable estate in the land.

There is nothing alleged in the bill which amounts to an equitable estoppel. All that is alleged is silence on

the part of Prettyman and no representation of a falsehood.  Where silence is the ground of estoppel, it is essential that the party estopped shall have knowledge of the facts and the other party be ignorant of the truth, and be misled into doing that which he would not have done except for such silence.  Complainant took no deed and is chargeable with knowledge of that fact, and there is no allegation that Prettyman knew it.  She had the means of ascertaining Prettyman's title by reference to the public record, and the facts alleged do not create an estoppel. *Thor* v. *Oleson,* 125 Ill. 365; *Mullaney* v. *Duffy,* 145 id. 559; *Holcomb* v. *Boynton,* 151 id. 294.

The decree of the circuit court is affirmed.

*Decree affirmed.*

BOGGS and WILKIN, JJ.: We do not concur in the decision of this case.

Mr. JUSTICE HAND, dissenting:

This was a bill in chancery filed in the circuit court of Fulton county by the appellant, against the appellee, to enjoin the prosecution of an ejectment suit pending in that court for the recovery of 680 acres of farming land, located in Mason county.  The ejectment suit was originally commenced in Mason county and on change of venue was transferred to Fulton county, where, upon a trial before the court, a jury having been waived, there was a finding and judgment in favor of the defendant.  The plaintiff prosecuted an appeal to this court, and the judgment was reversed and the cause remanded, and on a re-trial in the circuit court a judgment was rendered against the defendant, and a new trial was taken by her under the statute, and she then filed this bill.  A demurrer having been sustained thereto, and she having elected to stand by her bill, the same was dismissed for want of equity, and she has brought the same direct to this court by appeal, on the ground that a freehold and the constitutionality of a statute are involved.

The bill avers that on June 30, 1867, the appellant was the owner of a mortgage given by Thomas B. Breedlove to secure the payment of the sum of $19,616 on 1200 acres of land situated in Mason county, of which the land in question was a part; that after that date Thomas B. Breedlove conveyed all of said premises, subject to said mortgage, to Benjamin S. Prettyman; that on August 13, 1868, Benjamin S. Prettyman conveyed 680 acres of the premises covered by said mortgage, being the premises in controversy, to Absalom McCune; that on the same day Absalom McCune executed to E. G. Johnson, as trustee, a trust deed upon said 680 acres to secure the payment of his three promissory notes, for the sum of $5000 each, due and payable to the order of the appellant in one, two and three years from date, with interest at ten per cent per annum; that Benjamin S. Prettyman delivered said promissory notes to the appellant in part payment of the Breedlove mortgage and paid to her the balance thereof in cash, and she thereupon released the mortgage; that on November 13, 1868, Absalom McCune re-conveyed said 680 acres to Benjamin S. Prettyman; that at the time the appellant accepted the McCune notes and released the Breedlove mortgage, Benjamin S. Prettyman represented to her that the 680 acres of the 1200 acres upon which she retained a lien was good farming land and much more valuable than the land she released, and that Absalom McCune was financially responsible; that she was not acquainted with the financial responsibility of McCune and had never seen the land, but relied upon the statement of Benjamin S. Prettyman with reference thereto; that in 1871, the interest upon the McCune notes not having been paid and the land having been sold for taxes, she discovered, upon investigation, that the 680 acres upon which she had retained a lien for the unpaid balance of the Breedlove mortgage was a swamp and of little value; that the 520 acres which she had released was valuable farming land; that McCune was not

financially responsible and had left the State, and that the land was vacant and unproductive; that she thereupon, through her agent, entered into possession of the 680 acres as mortgagee, redeemed the same from the tax sales and paid up the back taxes thereon, and filed a bill in chancery in the circuit court of Mason county to set aside the release of the Breedlove mortgage on the ground of fraud and to foreclose the same, and subject to the payment of her debt the 1200 acres of land covered by it; that after protracted litigation she was defeated in her efforts to set aside the release of the Breedlove mortgage; that at the August term, 1879, of the Mason county circuit court, in the suit commenced to set aside the release and foreclose the Breedlove mortgage, a decree was entered foreclosing the Johnson trust deed, and a sale of the 680 acres covered thereby was ordered to satisfy the McCune notes, which then amounted to $31,-500; that said 680 acres were sold by the master in chancery, under the decree, to the appellant on October 27, 1879, for $10,000, and the master executed to her a certificate of purchase, as provided by the decree; that the master reported the sale to the court, and his report was approved and the sale confirmed on November 23, 1879; that appellant had been in the continuous possession of the premises from the year 1871 up to the time of the filing of the bill, and had paid all taxes assessed thereon during that time; that she had expended, with the knowledge of the appellee and Prettyman, a large amount of money in erecting fences, barns and dwelling houses, the premises now being divided into three farms with substantial improvements upon each; that she had constructed drains and ditches upon the land, and reclaimed it from overflow, at great expense to her; that at the time she took possession of the land, in 1871, and at the time of the master's sale, the entire tract was not worth to exceed $6800 and that the same is now worth not less than $40,000, and that said increased value is due to the

expenditure of money thereon by the appellant in drain-
ing and reclaiming said land and from the improvements
placed thereon by appellant; that no redemption from
the master's sale, upon the foreclosure of the Johnson
trust deed, was ever made, and that the appellant never
surrendered her certificate of purchase and took out a
master's deed; that the trustee, E. G. Johnson, died in-
testate in 1885; that in 1894 the appellant applied to his
widow and heirs to sell the premises under the power
conferred on the trustee by the trust deed; that the prem-
ises were sold by them and the appellant bid therefor
$35,000, and on June 11, 1894, they executed to her a quit-
claim deed, reciting the trust deed and the sale made by
them, which deed purported, upon its face, to convey to
the appellant all the title of Absalom McCune in said
680 acres which he had at the time of the execution of
the trust deed and the title thereby conveyed by him to
said trustee.

In the ejectment suit the plaintiff claimed title in fee
simple to the 680 acres, and the defendant filed the plea
of not guilty. The fee title was admitted to be in Ben-
jamin S. Prettyman on October 8, 1867, and the plaintiff,
to maintain title in himself, introduced a deed for said
lands from Prettyman and wife, dated August 13, 1868,
to Absalom McCune; a deed from Absalom McCune and
wife to Benjamin S. Prettyman, dated November 13, 1868,
and a deed from Benjamin S. Prettyman to the plaintiff,
dated September 4, 1893, all of which were duly acknowl-
edged and recorded, the consideration in the deed from
Benjamin S. Prettyman to plaintiff being $1000, and the
defendant, to maintain title in herself, introduced in evi-
dence the trust deed from Absalom McCune to E. G. John-
son, dated August 13, 1868, and in addition thereto relied
upon the facts above set forth, except the evidence then
showed her possession to date from about the year 1880,
instead of 1871, as is averred in the bill. It is averred
that the appellant cannot produce any other or further

testimony upon the trial of the ejectment suit when it shall be tried, to show title in herself.

This court, when the ejectment suit was here on appeal, held that the legal title to the premises was in the plaintiff. The opinion filed in that case is reported as *Lightcap* v. *Bradley*, 186 Ill. 510.

The trust deed from Absalom McCune to E. G. Johnson was executed on August 13, 1868, and the legislature, on March 22, 1872, passed an act entitled "An act in regard to judgments and decrees, and the manner of enforcing the same by execution, and to provide for the redemption of real estate sold under execution or decree," which went into effect July 1, 1872, section 30 of which reads as follows: "When the premises mentioned in any such certificate shall not be redeemed in pursuance of law, the legal holder of such certificate shall be entitled to a deed therefor at any time within five years from the expiration of the time of redemption. The deed shall be executed by the sheriff, master in chancery or other officer who made such sale, or by his successor in office, or by some person specially appointed by the court for the purpose. If the time of redemption shall have elapsed before the taking effect of this act, a deed may be given within two years from the time this act shall take effect. When such deed is not taken within the time limited by this act the certificate of purchase shall be null and void, but if such deed is wrongfully withheld by the officer whose duty it is to execute the same, or if the execution of such deed is restrained by injunction or order of a court or judge, the time during which the deed is so withheld or the execution thereof restrained shall not be taken as any part of the five years within which said holder shall take a deed." (2 Starr & Cur. Stat.—2d ed.—p. 2367.)

The appellant having failed to take out a deed on the sale to her under the foreclosure decree within five years from the expiration of the period of redemption, the certificate of purchase held by her became null and void,

and the legal title to the premises never vested in her but remained in the appellee's grantor, and the question presented here for decision is,—the appellant being in possession claiming to be the equitable owner of the premises by virtue of the foreclosure and sale under the Johnson trust deed, which sale was confirmed,—has she such an equitable interest in the premises, after the expiration of six years and three months from the date of sale, that a court of chancery will restrain, by injunction, appellee from disturbing her possession by ejectment or other proceedings at law?

The relation of the appellee's grantor and appellant to each other prior to the confirmation of the foreclosure sale was in the nature of that of mortgagor and mortgagee, and as against the grantor of appellee, Johnson, as trustee, held the fee title to the premises in controversy for the benefit of the appellant. He held the title, however, only for the purpose of securing the payment of the indebtedness due the appellant, and when that was paid or otherwise satisfied his title became extinguished by operation of law.

In *Ware* v. *Schintz*, 190 Ill. 189, which was an action of ejectment by the trustee in a trust deed, for the use of the holder of the indebtedness, to obtain possession as against the maker of the trust deed, on page 193 it was said: "The relation of plaintiff and defendant to each other is that of mortgagor and mortgagee, and under the repeated rulings of this court a mortgagee, as against the mortgagor, is held, as in England, in law, to be the owner of the fee, having the *jus in re* as well as *ad rem*, and entitled to all the rights and remedies which the law gives to such owner, and may, after condition broken, maintain ejectment against the mortgagor. The mortgagor or his assignee, however, is the legal owner of the mortgaged estate as against all persons excepting the mortgagee or his assigns. (*Delahay* v. *Clement*, 3 Scam. 201; *Vansant* v. *Allmon*, 23 Ill. 26; *Carroll* v. *Ballance*, 26 id. 9;

*Oldham* v. *Pfleger,* 84 id. 102; *Fountain* v. *Bookstaver,* 141 id. 461; *Esker* v. *Heffernan,* 159 id. 38.) The fee title held by the mortgagee is in the nature of a base or determinable fee. The term of its existence is measured by that of the mortgage debt. When the latter is paid or becomes barred by the Statute of Limitations the mortgagee's title is extinguished by operation of law. (*Pollock* v. *Maison,* 41 Ill. 516; *Harris* v. *Mills,* 28 id. 44; *Gibson* v. *Rees,* 50 id. 383; *Barrett* v. *Hinckley,* 124 id. 32; *Lightcap* v. *Bradley,* 186 id. 510.) Until it is extinguished the legal title is in the mortgagee for the purpose of obtaining satisfaction of his debt."

When the indebtedness secured by the trust deed became due, there were open to the appellant several remedies to enforce the payment of her debt: She could bring assumpsit upon the notes, put herself in possession of the land after condition broken, by ejectment, if necessary, that the rents and profits might be applied to the payment of her debt, or file a bill for foreclosure and sale, and under special circumstances she might have proceeded by *scire facias* or for a strict foreclosure. These remedies were cumulative, and either or all of them might have been pursued at the same time, until her debt was satisfied. (*Vansant* v. *Allmon,* 23 Ill. 26; *Rogers* v. *Meyers,* 68 id. 92; *Harper* v. *Ely,* 70 id. 581.) In *Vansant* v. *Allmon, supra,* on page 30 it was said: "A creditor by note and mortgage has several remedies, either and all of which he may pursue until his debt is satisfied. He may bring his action upon the note, or put himself in possession of the rents and profits by an ejectment after condition broken, or, if the mortgage be recorded, proceed by *scire facias* on the record and obtain a judgment to sell the land; or he may file his bill in chancery for a strict foreclosure of the equity of redemption, which courts will allow under a proper state of circumstances, or file a bill for foreclosure and sale, which is the usual practice in this State."

The appellant entered into possession of the land with a view to apply the rents and profits in payment of her debt, and at the same time proceeded in equity to foreclose the trust deed and sell the land. While she might thus proceed she could have but one satisfaction, and when a decree of foreclosure and sale was entered and the land was sold and the sale confirmed, the mortgage was exhausted and all the rights of appellant in the land merged in the decree and sale. *State Bank* v. *Wilson*, 4 Gilm. 57; *Wayman* v. *Crozier*, 35 Ill. 156; *Seligman* v. *Laubheimer*, 58 id. 124; *Kelgour* v. *Wood*, 64 id. 345; *United States Mortgage Co.* v. *Gross*, 93 id. 483; *Ogle* v. *Koerner*, 140 id. 170; *Davis* v. *Dale*, 150 id. 239; *Walker* v. *Warner*, 179 id. 16.

In the ejectment case (*Lightcap* v. *Bradley*) the foregoing authorities were reviewed, and on page 524 it was said: "A decree was entered in pursuance of the prayer of her bill, ordering a sale of the premises, which was duly made and she became the purchaser. Having made her election and secured a valid sale of the property she must abide by it. (*State Bank* v. *Wilson*, 4 Gilm. 57.) The cause of action was merged in that foreclosure and sale, and all the rights and liabilities growing out of the trust deed were transferred to the decree. When a mortgage is foreclosed by suit the decree of the court becomes the basis of title. (*United States Mortgage Co.* v. *Gross, supra.*) By the decree, and the execution thereof, the legal liability was transferred to the decree. The debt was merged in the decree, and the rights and liabilities growing out of the trust deed were fixed by such decree and to be enforced through its provisions. (*Wayman* v. *Cochrane*, 35 Ill. 151.

"It is insisted by counsel that the title conveyed to Johnson could not merge in the decree; and perhaps the doctrine of merger does not strictly apply, but the title which Johnson had was only available for the collection of the notes, and they were merged in the decree. The

·defendant had asked and obtained a decree for the enforcement of her rights in another manner and by another means. Whether the doctrine of merger applies or not, the sale of the premises under the decree exhausted all the rights and remedies under the trust deed, and the title which had been in the trustee was sold by the court. (*Kelgour* v. *Wood*, 64 Ill. 345; *Walker* v. *Warner*, 179 id. 16.) In *Seligman* v. *Laubheimer*, 58 Ill. 124, the court said (p. 126): 'Without determining the legal effect of the mere foreclosure, we do hold that the decree, followed by a sale of the premises, the purchase, and the subsequent acts of the first mortgagee, extinguished his mortgage lien. * * * Plaintiff in error obtained his decree, caused a sale, became the purchaser, received his certificate of purchase, and then procured an award for a special execution to make the residue of his debt. By these acts the mortgage lien was extinguished. The intention to merge the lien is clearly deducible from them.' In *Ogle* v. *Koerner*, 140 Ill. 170, the court said (p. 179): 'A mortgage, or, as in this case, a deed of trust in the nature of a mortgage, vests in the party secured a lien upon the mortgaged premises. By virtue of that lien the mortgagee is entitled to have the mortgaged property sold under a decree of foreclosure and the proceeds of the sale applied to the payment of the debt secured. This is the mode provided by law for the enforcement of the lien, and when the lien has been once enforced by the sale of the property, it has, as to such property, expended its force and accomplished its purpose and the property is no longer subject to it.' In *Davis* v. *Dale*, 150 Ill. 239, the law was again stated as follows (p. 243): 'By virtue of the lien created, the mortgagee or *cestui que trust* had the right to have the security foreclosed and the property sold and the proceeds applied in payment of the secured debt. But when this has been done, and the lien enforced by a sale of the property and the proceeds applied, the mortgage or trust deed has ex-

pended its force and the property is no longer subject to its provisions. (*Ogle* v. *Koerner*, 140 Ill. 170; *Seligman* v. *Laubheimer*, 58 id. 124.) Nor does it in any way affect the result that the holder of the secured indebtedness becomes the purchaser at the sale, whether he be the mortgagee or *cestui que trust* or not. By becoming the purchaser a new relation created by the statute exists, in nowise dependent upon any privity of contract between the purchaser and mortgagor.'"

From a consideration of the authorities the conclusion is irresistible that the foreclosure and sale divested the appellant of all the rights which she had in the premises under the trust deed, and that after the confirmation of the sale she had no right to hold the premises longer, as mortgagee or *cestui que trust* in possession, without the consent of the grantor of appellee or through a receiver, as the debt, as an incident to the trust deed, was satisfied and discharged, and the land being released from the lien created by the trust deed, the right to retain the possession thereof for the purpose of satisfying the mortgage debt was gone. The confirmation of the sale, however, created a new relation, and from that time until the equity of redemption expired the only rights of the appellant, growing out of the foreclosure and sale, were to have returned to her the amount of her bid, with interest, in case the premises should be redeemed from the sale, or in case no redemption should be made, to receive a deed of the land at the expiration of fifteen months from the date of sale, and to apply the rents and profits of the land during that period, by the consent of the maker of the trust deed or through a receiver, to the payment of the amount of the decree remaining unpaid after the application thereon of the amount of her bid, while during that time the grantor of appellee had the right to retain the possession of the premises and enjoy the use thereof, and to redeem from the foreclosure sale, and in case of a redemption the title would have been in

him freed from the debt. During the fifteen months allowed for redemption the appellant had only a lien upon the premises for the amount of her bid, with the inchoate right to a deed in case a redemption of the land from the sale did not take place, while the grantor of appellee was the owner of the land subject to the lien and had the right to redeem. So soon, however, as the right of redemption had expired the appellant became the equitable owner of the land with the right to take a deed, which would have invested her with the full title to the land, both equitable and legal, and the grantor of appellee had left remaining in him only the naked legal title to the land, which could have been divested by the appellant at any moment and without any act being performed by the grantor of appellee. All that was then necessary to complete her full title and ownership was the execution to her of a deed by the master. The master had no legal or beneficial interest in the land. He was simply a conduit through which, by virtue of a deed, the legal title would pass from the grantor of appellee to the appellant. As the grantor of appellee at that time had only the legal title, all the equitable interest in the land was in appellant, and upon uniting the legal title and equitable interest in her by a master's deed, her title would have been consummated and become complete.

In *Stephens* v. *Illinois Mutual Ins. Co.* 43 Ill. 327, the court had under consideration the question whether or not the mortgagor had an insurable interest in the mortgaged property after foreclosure and sale during the time allowed for redemption, and it was said (p. 331): "At the time of the fire, then, the position of Stephens was substantially that of a mortgagor, with a right to redeem. * * * That in this position he would have had a substantial, insurable interest does not admit of doubt. His estate, as mortgagor, would not have been lost until the expiration of his right to redeem. In this State the purchaser under a sheriff's sale upon judgment and execu-

tion, or at a master's sale on foreclosure of a mortgage, acquires by his purchase no new title to the premises until the period of redemption has passed and he is entitled to a deed. His deed will relate back, it is true, to the beginning of his lien in order to cut off intervening encumbrances, but it will not carry back the absolute divestiture of title, as is evident from the fact that neither judgment debtor nor mortgagor can be called to account for rents and profits. His title becomes absolute only when his right to a deed accrues. If it is a sale under a decree of foreclosure, the mortgagor still has the estate of a mortgagor, with this qualification: that the amount and time of redemption have become absolutely fixed by the decree and sale, and his estate will be absolutely divested if he fails to redeem within the allotted time."

The case of *Whiting* v. *Butler*, 29 Mich. 122, is very instructive upon the questions of the respective rights of the judgment debtor and purchaser in premises sold upon execution after the term of redemption has expired. Opinions were filed by four different members of the court. Mr. Justice Cooley on page 129 says: "After Drury had become entitled to a sheriff's deed, Campau's title would have been a mere legal title with the whole equitable right in Drury." And Mr. Justice Campbell on page 143 said: "The Drury title became an indefeasible right as soon as the statutory period of fifteen months expired. * * * The interest which Drury obtained by his execution sale was a vested and valuable interest. * * * Though not the legal estate, it was an equitable estate."

Jones, in his work on Mortgages, (vol. 2, sec. 1661,) in speaking of the rights of parties after sale, says: "The mortgagor still has the estate of a mortgagor, with this qualification: that the amount and time of redemption have become absolutely fixed by the decree of sale, and his estate will be absolutely divested if he fails to redeem within the allotted time."

In *Ketchum* v. *Schicketanz*, 73 Ind. 137, it was held that with the expiration of the time allotted for redemption the holder of a sheriff's certificate for land sold on execution or decretal order acquires an equitable estate in the land, of which one-third will pass to the wife upon the bankruptcy of the husband under the statute of that State, which provides that the surviving wife shall have a one-third interest in all the lands in which the husband had an equitable interest at the time of his death, and that her inchoate interest in his lands shall vest absolutely where the same are conveyed away from him, under judicial proceedings.

In *Wright* v. *Douglass*, 2 N. Y. 373, it was held the interest of a purchaser at an execution sale after the time of redemption had expired becomes an estate subject to sale upon attachment.

It seems clear that the equitable estate in said lands vested in the appellant immediately upon the expiration of the time allowed for redemption, the naked legal title thereof being in the grantor of appellee. On this title he could maintain ejectment against the appellant, and in case she brought ejectment against him he could defeat her. She, however, at the time his equity of redemption expired, and for many years prior thereto, had been in possession of the land. Whether that possession, during the period of redemption, was so far acquiesced in by the grantor of the appellee as to have made it lawful need not be considered, although at this distant time her possession with his consent might be presumed, but after that period had expired in equity it is clear she was entitled to possession. At least, she being the equitable owner of the estate and in possession, it was not inequitable that she should retain possession as against Prettyman or his grantee, who only had the naked legal title. As was said in *Whiting* v. *Butler*, *supra* (p. 139): "His right to a deed had become complete and vested. All he lacked of a legal title to the land, superior and paramount, was

the legal evidence such a deed would afford, and his right to this evidence or muniment was not contingent, —not dependent upon the will or discretion of any one. It was so complete that it was not necessary for him to resort to equity to obtain it if withheld. The right to it was so plainly and exclusively fixed and legal as to be cognizable at law and enforceable by *mandamus*,"—and in this State the appellant could have obtained the relief by motion. *People* v. *Bowman*, 181 Ill. 421.

Under the repeated decisions of this court it is clear that, by virtue of the terms of the statute above referred to, upon the failure of the appellant to take out a deed within the time fixed therein, the certificate of purchase issued to her became null and void and that no right could be predicated thereon by her. ˙ (*Ryhiner* v. *Frank*, 105 Ill. 326; *Peterson* v. *Emmerson*, 135 id. 55; *Belleville Savings Bank* v. *Reis*, 136 id. 242; *Seeberger* v. *Weinberg*, 151 id. 369; *Brown* v. *Ridenhower*, 161 id. 239.) The appellant, however, is not claiming any right here by virtue of the certificate of purchase, but being the equitable owner of the premises by virtue of the decree of foreclosure, the sale and the decree confirming the sale, and being in possession of the premises, the question is, should a court of equity permit her to be turned out of possession by one who has only the mere naked legal title to the land? The statute requiring a deed to be taken out within five years from the expiration of the period of redemption is a limitation law, and nothing more, and as a limitation law it is undoubtedly constitutional and valid. (*Ryhiner* v. *Frank*, *supra*.) The same rules of construction must therefore be applied to this statute that the courts have heretofore applied to statutes of limitation in general, and the law is well settled in this State that statutes of limitation do not run against a party while in possession of land. (*Mills* v. *Lockwood*, 42 Ill. 111; *Wilson* v. *Byers*, 77 id. 76; *Parker* v. *Shannon*, 137 id. 376.) In *Parker* v. *Shannon*, *supra*, the court said (p. 392): "A statute of

limitations or rule of limitation in equity does not run against 'a possessor of real estate, but it runs against him who is out of possession.' (*Mills* v. *Lockwood*, 42 Ill. 111.) 'The possession is notice to all, of the possessor's equitable rights, and he need to assert them only when he may find occasion to do so.'" To hold that said statute has the effect to divest the appellant of her equitable estate, she being in possession, and to invest the appellee with that estate, he being out of possession, would render it more than a limitation law and make it obnoxious to both the State and Federal constitutions.

It would seem, therefore, that while the right to a master's deed had been swept away by the statute, the statute had no effect upon the equitable interest of the appellant, accompanied, as it was, by her possession; that the statute did not operate upon the interest here asserted by reason of her possession, and that it is beside the case to say that the statute has barred her right to a deed. The equitable estate of appellant in the land after the period of redemption had expired, arose, not out of the certificate of purchase, which amounted to no more than evidence of her bid and when the period of redemption would expire, but by reason of her bid, the application thereof upon the decree, and the fact that the appellee failed to redeem, and her possession.

It is, however, contended that this court is committed by numerous decisions to a view contrary to the view herein expressed. I think, upon a careful analysis of the decisions relied upon, it will be found that none of them are inconsistent with what is here said, and that no case can be found in our Reports where the precise question presented here has been passed upon. In *Ryhiner* v. *Frank*, *supra*, the plaintiff brought ejectment to recover certain lots in Effingham, and as one source of his title relied upon a judgment rendered March 6, 1871, against their then owner, an execution sale of the lots on August 7, 1871, under the judgment, and a sheriff's deed of

them dated December 21, 1878, to him, as assignee of the certificate of purchase. The court held section 30 of the statute heretofore referred to, one of limitation, and valid, and as the sheriff's deed had not been taken out within the time limited by the statute, the certificate of purchase, on which the deed was given, had become null and void, and that the deed was of no effect. The case differs from the case at bar in that it was ejectment, where only legal titles are considered, and the purchaser was out of possession.

In *Peterson* v. *Emmerson, supra*, it appeared that a decree was entered in 1871, to foreclose a mortgage (executed in 1865) upon forty acres of land. On November 25, 1871, the master sold the land to the complainant and issued to her a certificate of purchase. In 1872 she took possession of the premises and received the rents and paid the taxes, but failed to take out a master's deed until more than five years had elapsed after the period of redemption had expired. She afterwards filed a bill against the master and the heirs of the mortgagor, to procure a decree requiring the master to execute a deed to her of the land. The chancellor so decreed, but on appeal this court held that section 30 was a limitation law, and that as it affected only the remedy, it applied to the master's sale made prior to its passage, and under the ruling made in *Ryhiner* v. *Frank, supra*, more than five years having elapsed after the period of redemption had expired and no deed having been taken out, the certificate of purchase was null and void, and that the master was powerless then to issue a deed, and that the court had no power to direct him so to do. While the question here presented was not presented there, the court did incidentally consider the question, and while it was not expressly passed upon, Mr. Justice BAKER, who wrote the opinion, used the following language with reference thereto (p. 60): "It does not alter the case that defendant in error has been in actual possession of the land since

1872, claiming ownership, and has paid all the taxes assessed thereon. Such acts do not so take the case out of the statute as to justify the transfer to her of the legal title vested in the heirs of the mortgagor. If she has gained any rights by virtue of such possession, claim of ownership and payment of taxes, the courts will, doubtless, if called upon, protect her therein; but surely the existence of such rights, if any there be, does not afford just and equitable grounds for transferring to her a legal title to which she is not entitled under the law of the land." In that case the relief sought was the transfer of the legal title to the complainant, while here the relief sought is the protection of the appellant's equitable interest from the assault made against her possession by the holder of the legal title, by ejectment.

In *Seeberger* v. *Weinberg, supra,* Seeberger was the owner of three notes secured by a trust deed upon certain lots located in Chicago. Default having been made, the trust deed was foreclosed and the lots sold to him on February 14, 1876, and a certificate of purchase was issued to him. No redemption took place and no master's deed was ever issued. The property was vacant, and on June 22, 1892, the widow and heirs of the grantor in the trust deed conveyed the premises to William Kornell, who immediately conveyed the same to Fannie Weinberg, who took possession and gave a trust deed thereon to secure the sum of $6000, which she had borrowed from the Bank of Commerce of Chicago with which to improve the property. On September 17, 1892, Seeberger filed a bill, making Fannie Weinberg and husband, Hermann Felsenthal, as trustee, and Jacob Gross, his successor in trust, and the Bank of Commerce, defendants, and prayed for a decree requiring Fannie Weinberg and her husband to execute and deliver to him a deed conveying to him the property, that his title to the lots be confirmed and that the trust deed be canceled and released of record. The court reiterated the doctrine

that a deed not having been taken out within five years after the period of redemption expired, the certificate of purchase was null and void, and held that the bill could not be maintained. In that case the property remained vacant until it was taken possession of by the remote grantees of the widow and heirs of the grantor in the trust deed, and while in possession Fannie Weinberg mortgaged the property to the bank. At the time Seeberger filed his bill he was out of possession, while here the appellant has been in possession since 1871, and was in possession at the time the appellee obtained the legal title from Prettyman, and by reason of such possession had notice of all the equitable rights of the appellant.

In *Brown* v. *Ridenhower, supra*, the bill was filed by the grantee of the purchaser at a foreclosure sale, where no deed had been taken out and where more than five years had elapsed subsequent to the expiration of the period of redemption, to set aside two quit-claim deeds upon the premises as a cloud upon the title of the complainant, executed by the original mortgagor and his grantee, and the court held that such bill could not be maintained. The relief prayed in this case was similar to the relief prayed in *Peterson* v. *Emmerson, supra*, and was not a bill, as here, to protect the possession of the complainant under an equitable title.

In the opinions in the foregoing cases are to be found expressions which, standing alone and considered by themselves and not in connection with the facts then before the court, would seem to extend section 30 of the statute far enough to cut off and bar the equitable interest of the purchaser at a master's sale, even where he was in possession, if a deed was not taken out within five years after the expiration of the period of redemption; but it was not necessary for the proper decision of any of those cases that the court should determine that question, and what is said in the opinions of the court in deciding them, by way of argument or illustration,

that was not necessary to have been said for a proper determination thereof, is *obiter dicta,* and not controlling upon the court when a case arises where the question is squarely presented and is vital to a determination of the case then before the court.     In *Brown* v. *Coon,* 36 Ill. 243, on page 246 Mr. Justice LAWRENCE said: "It is a familiar rule of criticism in regard to judicial decisions, that their authority arises from what the court *decides* in reference to the facts before it, rather than from what the judge who delivers the opinion may say in illustration and support of the ruling of the bench. When it is remembered that judges are often obliged to write a hundred opinions per annum, they would be more than human if they did not occasionally use expressions of a general character, which, while perfectly true in regard to the case before them, are at the same time incorrect when pushed to extremes or applied to a totally different state of facts."     And in *Mayer* v. *Erhardt,* 88 Ill. 452, on page 457 Mr. Chief Justice SCHOLFIELD quotes with approval the language of Chief Justice Marshall in *Cohens* v. *Virginia,* 6 Wheat. 399, where he said: "It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

From what has been said it is clear that appellant is the owner of the equitable—the full beneficial—interest in the premises sought to be recovered in the ejectment suit, but that the legal title must prevail at law, and

that her equitable interest will be lost to her unless the prosecution of the ejectment suit is enjoined, as in that suit she cannot plead and prove her equitable interest as a defense. That a court of chancery has jurisdiction in such state of case to enjoin the prosecution of the ejectment suit is well settled by the authorities. (*Bishop of Chicago* v. *Chiniquy*, 74 Ill. 317; *County of Cook* v. *City of Chicago*, 158 id. 524; *McCaa* v. *Woolf*, 42 Ala. 389; *Smith* v. *Spencer*, 73 id. 299; *McKibbin* v. *Bristol*, 50 Mich. 319; *Siemon* v. *Schurck*, 29 N. Y. 598.) In *Bishop of Chicago* v. *Chiniquy*, *supra*, it is said the basis upon which a court of chancery enjoins the prosecution of an action of ejectment is, that the complainant "has some equitable defense which a court of law cannot take cognizance of, either by reason of want of jurisdiction or from the infirmity of legal process."

It is no answer to the position that a court of chancery should grant the relief prayed for in this bill, to say that the legal title to the premises in question will still remain in appellee. Although the legal title thereto will not, by the decree, be transferred to the appellant, the appellee will, after the decree is entered, be powerless to assert the legal title against the appellant or her successors in title. The effect of the decree will be to protect the appellant and her successors in title in the possession and enjoyment of the land. We have repeatedly held, where there is an outstanding title, and a bill is filed to remove it as a cloud upon the complainant's title, that the proper practice is to enjoin the assertion of such title against the complainant by the holder thereof, his heirs and assigns, and not to decree the conveyance thereof to the complainant. *Barnett* v. *Cline*, 60 Ill. 205; *Reed* v. *Reber*, 62 id. 240.

From a careful examination of this record I have reached the conclusion that the equities of this case as presented by her bill are with the appellant and that the circuit court erred in sustaining the demurrer thereto.