(No. 20579.— )

THE CHICAGO JOINT STOCK LAND BANK, Plaintiff in Error, *vs.* DANIEL P. McCAMBRIDGE *et al.*—(THE FIRST TRUST AND SAVINGS BANK OF MORRIS, Defendant in Error.)

*Opinion filed April 23, 1931.*

JOHN A. DOUGHERTY, (BYRON TYLER, and JOHN F. DENISSEN, of counsel,) for plaintiff in error.

ARLEY MUNTS, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This is a writ of error to the Appellate Court for the Second District to review its judgment affirming an order of the circuit court of Grundy county approving the report of a receiver and ordering distribution.

The Chicago Joint Stock Land Bank was the holder of a note for $24,000 executed by Daniel P. McCambridge and his wife and secured by a mortgage on land in Grundy county. The First Trust and Savings Bank of Morris was the owner of four notes of the same makers of the aggregate amount of $3000, secured on the same land by a trust deed subsequently executed which was subject to the lien of the mortgage. The Land bank filed a bill in the circuit court of Grundy county for the foreclosure of the mortgage making parties the savings bank and the trustee, who filed a cross-bill, and on June 2, 1928, a decree was entered foreclosing both the mortgage and the trust deed, finding the latter to be a junior lien. Previous to the entry of the decree, on motion of the trustee and the savings bank, with the consent of the grantors in the trust deed, a receiver was appointed, without bond, to receive, collect and enforce payment of the rents during the pendency of the action. The land was sold under the decree on July 14, 1928, to the Land bank for the full amount of its debt and interest and the costs, and the sale was reported to the court the same day and approved. Afterward, on August 25, 1928, the receiver filed a petition alleging that Vincent McCambridge was a tenant in possession of the premises under a lease from Daniel P. McCambridge dated March 1, 1928, for the farming year from March 1, 1928, to February 28, 1929; that the receiver had assumed the position of landlord and gone into possession of the premises, and that Vincent McCambridge had attorned, as tenant, to the receiver; that the period of redemption from the master's sale would expire October 14, 1929, before which all crops

for the farming year 1929 would be harvested, and the petition prayed the court to authorize the receiver to lease the premises to Vincent McCambridge for the farming year from March 1, 1929, to February 28, 1930, on the basis of five dollars an acre cash rent for pasture land, payable October 1, and share-rent of half the corn and two-fifths of the small grain, (lessee to furnish the seed,) harvest and thresh it at his own expense and deliver the share-rent at the elevator to the order of the lessor, free and clear of all charges and expenses. On the same day the court entered an order authorizing the receiver to enter into a lease of the premises in accordance with the petition and thereupon adjourned the term. On January 13, 1930; the receiver filed a report covering his acts from the time of his appointment, showing receipts of $1943.43 from crops harvested during 1928 and a balance on hand of $1563.99, $379.44 having been expended for certain itemized purposes. He further reported his lease of the premises on August 25, 1928, in accordance with the order of that date; that he had on hand 706 bushels of oats in a bin on the premises, received as his share-rent of the oats for 1929, and had also on hand one-half of the corn raised on ninety-eight acres of the premises as his share-rent of the corn for 1929, which was fully matured before October 14, 1929, but only a portion of which had been picked before October 28, 1929, though all of the corn had been picked and husked and was in a crib on the premises when the report was filed; that he had not received from the tenant the cash rent for the pasture land due October 1, 1929, at the rate of five dollars an acre for approximately twenty acres; that with the consent of the Chicago Joint Stock Land Bank, the purchaser of the premises, he entered into a lease of them on September 16, 1929, for the year from March 1, 1930, to February 28, 1931, to Vincent McCambridge on the same terms and conditions as provided by the leases under which the tenant farmed the premises during the period of the re-

ceivership. He prayed the court to approve his report, fix his fees, direct him as to the grain on hand and the cash rent, order distribution and generally direct him in the premises. The Land bank filed objections on the same day to the receiver's report, alleging that the crops not severed from the realty on October 14, 1929, became the property of the Land bank as the purchaser at the foreclosure sale and the grantee in the master's deed. Objections were also filed by the First Trust and Savings Bank of Morris, alleging, among other things, that the lease for 1929 was made by order of the court and the receiver was ordered to collect the rents for the year from March 1, 1929, to February 28, 1930, and therefore he was entitled to the rents and they should be applied on the decree indebtedness owing to the cross-complainant. The court entered an order approving the receiver's report, allowing him $150 for his compensation, directing him to pay the taxes for the year 1929, to collect from the tenant his share of the oats and corn and the cash rent, and sell the crops received as share-rent and charge himself with the proceeds as well as the cash rent and make distribution of the net funds remaining in his hands, charging to the complainant, the Chicago Joint Stock Land Bank, the prorated amount of the insurance premium from October 28, 1929, to the expiration of the policy, computing the net income for the farming year from March 1, 1929, to February 28, 1930, after deducting therefrom the prorated amount of the insurance premium from January 22, 1929, to October 28, 1929, and the receiver's fees and 1929 taxes in full, as well as any other expenses of the receivership during said farming year, and directing him to pay one-third of the net income for the farming year, less the charged item for the unexpired portion of the insurance premium, to the complainant as the purchaser of the premises, and to pay the balance of the funds in his hands, being less than the total amount due the cross-complainant, to the First Trust and Savings Bank, after deducting all expenses of the receiv-

ership and the costs taxed for foreclosing the second mortgage to the cross-complainant, and then file his supplemental report. The Chicago Joint Stock Land Bank appealed to the Appellate Court for the Second District, which affirmed the order.

The plaintiff in error does not contend that it is entitled to any of the funds received by the receiver which the latter was entitled to collect as rent for the premises during the period of redemption. It does contend, however, that upon its receiving the deed of the master after the expiration of that period, conveying to it the land sold under the decree, it became the owner of the land, including the corn grown upon it and still not severed from it; that the rights of the tenant under the lease expired with the destruction of his landlord's title by the conveyance of the land, which conveyed not only the land itself but the unharvested crop of corn still standing on it and not severed from the soil. The general rule of the common law is that growing crops form a part of the real estate to which they are attached and follow the title thereto. (*Altes* v. *Hinckler,* 36 Ill. 275; *McGinnis* v. *Fernandes,* 135 id. 69.) Therefore a purchaser who has acquired title to the land through a sale upon a decree of foreclosure of a mortgage is entitled to the growing crop sown after the execution of the mortgage and not harvested before the purchaser acquires title to the land. *Anderson* v. *Strauss,* 98 Ill. 485; *Sherman* v. *Willett,* 42 N. Y. 146; *Jones* v. *Adams,* 37 Ore. 473; *Beckman* v. *Sikes,* 35 Kan. 120; *Goodwin* v. *Smith,* 49 id. 351; *Jones* v. *Thomas,* 8 Blackf. 428.

A sale under a decree of foreclosure of a mortgage extinguishes the mortgage and satisfies the debt secured by it to the extent of the purchase price received. It does not, however, convey the title, which remains in the mortgagor or his grantee until the expiration of the fifteen months' period of redemption and until a conveyance by the master's deed. (*Bradley* v. *Lightcap,* 202 Ill. 154; *Schroeder* v.

*Bozarth,* 224 id. 310.) Both before and after a sale under a foreclosure decree the owner of the equity of redemption has the same estate in the land. (*Williams* v. *Williston,* 315 Ill. 178; *Ætna Life Ins. Co.* v. *Beckman,* 210 id. 394.) The only qualification of his estate is that the amount and time of the redemption have become absolutely fixed by the decree and sale, and his estate will be absolutely divested if he fails to redeem within the allotted time. (*Stephens* v. *Illinois Mutual Ins. Co.* 43 Ill. 327.) Until the conveyance by the master the mortgagor or his grantee is entitled to the possession and use of the premises to the same extent as before the sale and may convey them as he chooses, but upon such conveyance by the master the grantee becomes vested with the complete title to the land, with all houses, barns, fences and improvements of every kind erected on or attached to the land, including all crops growing or grown, matured or unmatured, and not severed from the land.

In this case the debt to the Land bank secured by its mortgage was paid and satisfied on July 14, 1928, by the sale under the decree. Nothing more was due to it. Only the indebtedness to the First Trust and Savings Bank remained unpaid, and it was no longer a lien because the whole property was consumed in the payment of the first lien. The debt remained evidenced by the deficiency decree, and so far as appears the only security for its payment was the right of the receiver to the possession of the property described in the trust deed and to collect the rents arising from it during the period of redemption. The Land bank had no interest in the possession or the rents during that time. It had, however, the right to a deed conveying unconditionally the absolute ownership of the land immediately upon the expiration of that time without redemption having been made.

The order purporting to authorize the receiver to lease the premises for a term beyond the expiration of the period

of redemption was not within the jurisdiction of the court and conferred no authority to lease the land beyond the expiration of the mortgagor's estate. To the extent of the time for redemption the lease was valid. The decree of sale was entered on June 2, the last day of the January term. The master's sale was made and confirmed on July 14, six weeks later, and the litigation was finally disposed of so far as the plaintiff in error was concerned. Its mortgage was foreclosed, its debt collected in full and it had no further interest in the case. The only reason for retaining the case on the docket was for the settlement of the receiver's accounts, with which the plaintiff in error had no concern. Six weeks later, on August 25, the last day of the June term, the receiver filed his petition, and, without any notice, so far as appears, to the plaintiff in error, asked leave to lease the premises which had been sold, not until the expiration of the time for redemption or until their conveyance to the plaintiff in error, (though the petition stated that the period of redemption would expire on October 14, 1929, before which time all crops for the farming year 1929 would be harvested,) but until March 1, 1930. The mortgagor's title, which was the basis of the receiver's right and also of the court's jurisdiction, would cease on October 14, 1929, or as soon thereafter as the master should make a deed. The plaintiff in error's title would then accrue if redemption should not be made, and the court had no jurisdiction to deprive it of the full possession and enjoyment of its property. It had no more power to confer upon the receiver authority to grant to McCambridge the right to the enjoyment of the plaintiff in error's property for four months after it should acquire title under the master's deed than it had to authorize him to grant its enjoyment perpetually— that is, to convey the title in fee simple. After the execution of the master's deed the plaintiff in error might have applied to the court for a writ of assistance against Mc-Cambridge, the tenant, to get possession of the land, or

might have recovered the possession by an action of forcible detainer or ejectment. It would be no defense that the receiver had granted him a lease for a term which did not expire until more than four months after the plaintiff in error's ownership began. When the mortgagor's title ended, all interest in the property, or power over it based on his title, ceased. The court had no more authority to lease, or direct the receiver to lease, the plaintiff's property, or prevent its free use and possession of it, than any individual. Its jurisdiction was exhausted, so far as the plaintiff in error was concerned, by the rendition of the final decree of foreclosure, the sale of the land under the decree, its approval by the court, the distribution of the proceeds, the satisfaction of the decree and the conveyance of the property to the purchaser. The master's deed is dated October 24, 1929, but it was not recorded until October 28. The presumption, in the absence of evidence to the contrary, is that it was delivered on the day of its date. The evidence shows that thirty bushels of the corn had been gathered before that date but that all of the corn raised on the premises except thirty bushels was severed from the soil and placed in cribs after October 24, 1929, and this corn is the property of the plaintiff in error.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to enter a decree finding the plaintiff in error entitled to all the corn grown on the land except the thirty bushels gathered prior to the delivery of the master's deed to it, ordering its delivery to him and settling the receiver's accounts in conformity with this finding.

*Reversed and remanded, with directions.*