### In re BORGELT (two cases).
Nos. 5535, 5536.

District Court, S. D. Illinois, N. D.
March 20, 1935.

Howard White, of Peoria, Ill., for debtors.

R. J. Kavanagh and E. D. McLaughlin, both of Peoria, Ill., for creditors.

MAJOR, District Judge.

Benjamin F. Borgelt and Charles W. Borgelt, brothers, on November 7, 1934, filed their individual petitions under section 75 of the Bankruptcy Act, as amended, 11 USCA § 203. Each obtained an injunction against Imogene Bohne, Edward J. Cullinane, and J. P. McNally, in their representative capacity as executors, and Margaret Cullinane, legatee, etc., restraining them from further proceeding in a foreclosure proceedings in the circuit court of Fulton county, Ill. The petitioners will hereinafter be referred to as the debtors and the persons above named enjoined as the creditors.

Decree of foreclosure had been entered, sale held, and a receiver appointed by the state court, who went into possession of the real estate described in the said mortgage, and the petitions in the present matter were filed on the same day and only a few hours prior to the expiration of the twelve-month period of redemption. The land in question was bid in by the creditors at the foreclosure sale for $28,000. In addition, a deficiency judgment was rendered against debtors in the sum of $4,000. It seems debtors had other obligations of about $5,000, with assets of $4,600, not including the foreclosed land, and the value of said land was stated in debtor's petitions at $29,000.

Debtor's petitions were approved by the court as properly filed under the act, referred to the conciliation commissioner of the proper county, and, after certain proceedings before said commissioner, which will hereafter be referred to, a report was made by said commissioner that debtors had failed to obtain a composition or extension agreement with their creditors. The commissioner reported that no proposal had, in good faith, been made by debtors and recommended the proceedings be dismissed. Thereupon, debtors amended their petitions and asked that they be adjudicated bankrupts under section 75 subdivision (s) (11 USCA § 203 (s). Creditors, in the meantime, had filed a petition requesting that the restraining order be vacated; that the petitioners be permitted to obtain a master's deed to the real estate in question, the fifteen-month period of redemption having expired; and that debtor's petitions be dismissed.

The first question presented involves a construction of section 75 of the Bankruptcy Act (see 11 USCA § 203), entitled "Agricultural compositions and extensions," enacted March 3, 1933, hereafter referred to as the original act, as distinguished from subdivision (s) of the act which became effective June 28, 1934, commonly referred to as the Frazier-Lemke Act (11 USCA § 203 (s).

In other words, it is claimed there has been no such compliance with subdivisions (a) to (r), 11 USCA § 203 (a to r), which will permit debtors to be adjudicated under subdivision (s), 11 USCA § 203 (s), and that the petitions should be dismissed for such noncompliance. Neither side disputes, in fact it seems certain, that under the lan-

guage of subdivision (s) "any farmer failing to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition or extension proposal * * * may amend his petition or answer asking to be adjudged a bankrupt," a debtor may be so adjudged only when the procedure outlined in the original act has been followed.

Counsel for the creditors earnestly insist that before a debtor may be adjudged under subdivision (s), he must have, in good faith, made a valid offer of composition of his unsecured claims and an offer of extension of secured claims. In other words, the contention is made, forcibly and with considerable logic, that the "terms of composition" which the debtor is permitted to offer can have no application to secured creditors and such a proposal, if made, cannot be held to have been made in good faith. It is claimed that the only kind of a proposal which may properly be made to secured creditors is one of extension. On the other hand, it is the position of counsel for debtors that the terms "composition or extension" apply alike to secured and unsecured creditors.

The court is obliged to construe the various paragraphs as they affect the questions involved and to determine what was the intention of Congress as it can be gathered from the language contained in the act. The question here presented, so far as this court is advised, has not, heretofore, been passed upon.

 I assume there would be little, if any, dispute among the courts or members of the bar that section 75, taken as a whole, was intended to enable farm debtors, either insolvent or unable to meet their obligations, to retain control of their property by turning over to their creditors, including secured creditors, the fair and reasonable value of said property; that under the original act it was intended to provide a means whereby such purpose might be accomplished by agreement between a debtor and his creditors, and that under subdivision (s), it was intended to permit a similar result without such agreement. The original act provides the procedure by which the former result may be accomplished, and subdivision (s) the procedure by which the latter result may be accomplished. The law undoubtedly should be construed in a manner which will produce the intended result if that can be done without overlooking the safeguards provided in the law for the protection and benefit of creditors. While the law was enacted to afford relief to distressed farm debtors, yet it must not be overlooked that many of the creditors affected by the operation of the law are, perhaps, in financial circumstances as bad as those for whose benefit the legislation was enacted. One seeking benefits provided by the law after initiating the procedure must, in my opinion, carry the burden of pursuing the various steps provided diligently, honestly, in good faith, and without unnecessary delay.

 The position of counsel for the creditors, that a debtor is not permitted to offer a proposal of composition to secured creditors, cannot, in my opinion, be maintained. To do so is to read into the act words which are not there. In support of this argument, section 12 of the Bankruptcy Act (11 USCA § 30) is cited as being a comparable situation to that here presented. It is claimed that because the courts have construed that section as not being applicable to secured creditors, a like construction must be placed upon the act with which we are now concerned. It must be remembered, however, that heretofore Congress has not seen fit, in bankruptcy legislation, to invade the field of secured creditors. Here it has deliberately done so and has used the words "composition or extension" with reference to secured and unsecured creditors, without distinction. It is not easy to believe that Congress, if it had intended that "proposals of composition" should apply only to unsecured creditors, and only "proposals of extension" could be made to secured creditors, would have failed to say so, when it would have only required the addition of the words "to unsecured creditors" after the word "composition" and the words "to secured creditors" after the word "extension." There is to be found, however, in subdivisions (g), (i), and especially (k), 11 USCA § 203 (g, i, and especially k), relied upon by counsel for creditors, language apparently inconsistent with this view. It seems to me, however, that these provisions are for the benefit of the nonassenting creditors and that subdivision (k) is especially for the benefit and protection of nonassenting secured creditors. It is urged, on behalf of the creditors, that by reason of the language in subdivision (k) that the court would not have the authority to approve a proposal of composition even though it was agreed to by all creditors. This certainly cannot be a correct construction of the law. When the debtor complies with the provisions of sub-

division (c), 11 USCA § 203 (c), the court at once acquires jurisdiction of the debtor and his property wherever located, as well as his creditors, and, having thus acquired jurisdiction, it surely would have the right to approve a composition proposed and agreed to by all creditors. That the debtor can only make application for confirmation of a composition or extension proposal in compliance with subdivision (g) and that the court can only confirm such proposal in compliance with subdivision (i), with the further restriction contained in subdivision (k), is not, in my opinion, inconsistent with a proposal for composition or extension made to all creditors, including secured creditors, and is not in derogation of the good faith with which such proposal must be made. Assuming that a debtor was acting honestly and in good faith, how could he know in advance that all creditors would not agree to the terms of composition which he might propose. The very purpose of the original act was to enable debtors to make such proposals, in an official way, with a view of ascertaining if it were not possible for him to agree with his creditors. It is my construction of the act that the debtor has the option of presenting to all creditors a proposal of composition or extension, or a proposal of composition to some creditors and a proposal of extension to others. After he has made such proposal in good faith, which I shall hereafter refer to, it is then optional with the creditors whether or not such proposal will be accepted. The determination made by the creditors at this stage of the proceedings is important, for by refusing a fair offer, they must be prepared to accept the consequences of subdivision (s). If the debtor has succeeded in obtaining the necessary number with the necessary amount, including all secured creditors in case his offer has been one of composition, the debtor has then arrived at the place where he may make application for confirmation, providing he meets the other requirements of subdivision (g). Of course, if the proposal is one of composition which "reduces the amount or impairs the lien of any secured creditor," any such creditor, under subdivision (k), may, by refusing to accept the proposal, prevent such confirmation. If confirmation of the proposal is thus prevented, or, after the debtor has made a fair proposal, for any reason over which he has no control, he is unable to comply with subdivisions (g) or (i), then the debtor has pursued as far as may be his remedy under the original act and is ready to proceed under subdivision (s).

█ I shall now consider the character of proposal which the debtor must make to his creditors in order to constitute such a compliance with the original act, which, if not confirmed, will entitle him to be adjudicated a bankrupt and follow the procedure provided in subdivision (s). It is contended by counsel for the debtor that it is really none of the creditor's concern what character of proposal is made, and that the creditor has no right to interpose any objection or question the regularity or legality of the procedure which the debtor has pursued under the original act. With this contention I do not agree. Of course, there is nothing in the act concerning such right, but when a procedure is initiated by a debtor by which a creditor is being deprived of his property or his rights, it would be a novel theory indeed, if the legality of such procedure not open to attack, in the courts. It seems to me the appropriate time to offer such attack is when the debtor amends his petition and comes under subdivision (s).

█ In considering the character of proposal which must be made by the debtor in order to meet the requirements of the act, I apprehend no rigid rule can be determined. Some considerable latitude must be allowed to meet the circumstances of each particular case. However, it seems that no debtor should be permitted to make and no creditor should be required to exercise his right in accepting or rejecting a proposal, except one made honestly and in good faith. In subdivision (i), 11 USCA § 203 (i), it is provided, among other things, that before the court shall confirm the proposal, it must be found "the offer and its acceptance are in good faith," but irrespective of this provision, I am of the opinion the requirements of the act could not be met unless the proposal was so made. Taking into consideration that what is sought to be accomplished in the original act by agreement is the same as what may be accomplished under subdivision (s), where the parties have been unable to agree, it seems reasonable to conclude that the consideration contained in a proposal of composition should be in an amount or value not substantially less than the value of debtor's property, excluding the value of any exemptions to which he may, by law, be entitled. The proposal should be sufficiently definite and certain that the creditors may understand what it amounts

to. A proposal conditioned upon the ability of the debtor to borrow the amount proposed certainly would not be sufficient. This, however, does not necessarily mean that the proposal must be in cash. Other than the requirement in subdivision (g) that "the money or security necessary to pay all debts which have priority unless waived," etc., there is no place in the act where the word "money" or "cash" is used. We find the word "consideration" used in a manner similar to that in section 12 of the Bankruptcy Act (11 USCA § 30). In construing said section, the courts and text-writers have discussed what is meant by "consideration" as it affects "offers of composition." In the case of Kinkead v. J. Bacon & Sons et al. (C. C. A.) 230 F. 362, on page 366, the court, in discussing this very question, said: "But the 'consideration to be paid by the bankrupt to his creditors' may or may not be cash. A bankrupt usually does not have enough ready money of his own to carry out a composition. The 'consideration to be paid' may be the bankrupt's notes, secured or even wholly unsecured, or his mere promise to pay in the future a given amount. * * * It is common knowledge that compositions sometime contemplate the taking by creditors of stock or securities under a reorganization," etc. Petition for certiorari in this case denied by the Supreme Court, 241 U. S. 680, 36 S. Ct. 728, 60 L. Ed. 1234.

In Re Isidor Klein, Inc. (C. C. A.) 22 F. (2d) 906, on page 908, the court, in discussing this same question, said: "Section 12b of the act (11 USCA § 30 (b) provides that an application for confirmation may be filed after, but not before, it has been accepted by the requisite creditors, 'and the consideration to be paid by the bankrupt to his creditors, and the money necessary to pay all debts which have priority and the cost of the proceedings, have been deposited' subject to the order of the judge. The bankrupt's application for confirmation, official form No. 61, requires him to state that he has deposited 'the consideration to be paid' to his creditors. That this means notes, as well as cash, if notes form part of the consideration, can scarcely be doubted." (Citing cases.)

In Re Wayne Realty Company (D. C.) 275 F. 955, on page 957, the court said: "In other words, the theory of a composition is a payment or promise to pay to creditors of a certain definite amount or other consideration in lieu of a dividend derived from the sale of bankrupt's assets. It presupposes a consideration and a weighing by the creditors of the relative advantage of what is offered by composition over what may be realized from the assets." In this opinion the court quotes from Loveland on Bankruptcy, par. 693, as follows: "The theory of a composition is that the cash value of the bankrupt's estate is substantially divided among the creditors in proportion to their respective debts," and in the same paragraph the same text-writer is quoted as follows: "The statute does not declare of what the consideration must consist. Manifestly it should be of such a nature that it can be readily distributed by the judge. * * *" Brandenburg on Bankruptcy, par. 1198, is quoted as follows: "The bankrupt must make an offer of specific terms upon which he shall have back his estate, * * *" and in paragraph 1208 as follows: "The consideration is not, however, limited to money, but must be something equivalent thereto, which may ultimately be convertible into money, and extends to reasonably safe securities, or promises to pay such as a good business man would naturally accept in payment of merchandise sold."

In view of the above authorities and what seems to me a reasonable and sensible view of the situation, a debtor might offer as a proposal of composition something other than cash, provided its value was substantially equivalent to the value of his assets.

What I have said leads me to the conclusion that the offer of composition made by the debtors in the present case was not in compliance with the original act. The offer of composition made was indefinite and uncertain, contingent on debtor's ability to negotiate a loan, and, in addition to that, the amount conditionally offered was out of all proportion to the value of the lands in question. True, there is no evidence before the court as to the fair and reasonable value of debtor's property, yet there is in the schedules filed by them their own statement placing a value upon the land of $29,000. The offer of composition was for about half of such amount. It cannot be said, in my opinion, that a debtor who offers a proposal of composition to his secured creditors of an amount so disproportionate to the fair and reasonable value of his property is acting in good faith. The offer made to unsecured creditors is all of debtor's personal property without any description as to quantity, quality, or value. No creditor should be required to pass upon an offer so indefinite and uncertain.

The next question with which the court is confronted, and an important one it is, is whether the restraining order should be vacated so that the holder of the certificate of purchase may apply for a deed. As heretofore stated, the injunction was issued, at the time of the filing of debtor's petition, on the last day of the period of redemption and at a time when a receiver appointed in the state court had been in possession and control of the premises for almost a year. The solution of this question involves, of course, a construction of the language found in subdivision (o) 11 USCA § 203 (o). There is no other provision in section 75 or in the Bankruptcy Act (11 USCA § 203) which would authorize either the issuance or maintenance of such a restraining order. The said subsection prohibits the institution or maintenance of certain designated proceedings against the farmer or his property after the filing of his petition under section 75 and prior to the confirmation or other disposition of the same. Whether this subdivision is self-executing or requires a restraining order to give it effect is not here material. It seems, however, that the language contemplates, after proceedings have been completed before the conciliation commissioner, the Judge may grant leave to the creditor to proceed irrespective of the said subdivision. The only language in said subdivision which could be applicable in the instant case is "proceedings for foreclosure of a mortgage on land," and the question first arising on the facts before the court is whether such proceedings are pending, or, in the language of the act, whether there is or has been, since the mortgage sale, a maintenance of such proceedings. This undoubtedly involves an application of the Illinois statute on mortgage foreclosures as construed by the Supreme Court of Illinois.

In Re Duffy (D. C.) 9 F. Supp. 166, will be found a very exhaustive opinion by Judge Lindley regarding such statute and the construction placed upon it by the Illinois courts, from which he, on page 168, concludes: "That the equity of redemption of the bankrupt in this case was a property right which in the ordinary course of procedure he would have lost had he not filed his petition in this court prior to the expiration of the period provided." The facts before the court in that case were very similar to the facts here presented, and while I agree with the conclusion there reached, that the equity of redemption is a property right, yet I reluctantly find myself unable to follow in the conclusion that a mere equity of redemption after foreclosure constitutes a property right within the meaning of subdivision (s), section 75.

In Kemper v. Weber, 318 Ill. page 494, on page 499, 149 N. E. 478, 480, the court said: "The decree for foreclosure from which no appeal was taken, was a final adjudication of the questions arising there." There are other Illinois authorities to the same effect, and there can be no doubt but what a decree confirming the report of sale made by officers authorized to conduct the same is the final step in a mortgage foreclosure in this state. There is nothing further to be done by the court and there is no occasion, except perhaps in special instances, that the cause be longer carried upon the docket of the court. In Chicago Joint Stock Land Bank v. McCambridge, 343 Ill. 456, on page 460, 175 N. E. 834, 836, it is said: "A sale under a decree of foreclosure of a mortgage extinguishes the mortgage and satisfies the debt secured by it to the extent of the purchase price received. It does not, however, convey the title, which remains in the mortgagor or his grantee until the expiration of the fifteen months' period of redemption and until a conveyance by the master's deed. Bradley v. Lightcap, 202 Ill. 154, 67 N. E. 45; Schroeder v. Bozarth, 224 Ill. 310, 79 N. E. 583." It seems from these authorities that after a mortgage foreclosure sale, the relation of debtor and creditor no longer exists unless it be as to the amount contained in a deficiency decree, and even this is a debt which loses its status in so far as it is secured by the mortgaged premises. In other words, there is no longer any privity of relation existing between the mortgagor and mortgagee or the debtor and creditor. It is true that the purchaser does not obtain title to the land, but he obtains a certificate of purchase which provides, in accordance with the Illinois statute (Smith-Hurd Ann. St. c. 77, § 20), that he is entitled to a deed at the expiration of fifteen months unless the mortgagor, within twelve months, or other designated parties in the succeeding three months, redeem from said sale. While the purchaser does not acquire title, yet he does acquire, by reason of the decree of court and statute, a vested right. The purchaser, perhaps, in fact quite often, is a third party, and one who is an entire stranger to the foreclosure proceedings and all parties connected therewith. The relation of debtor and creditor between the original parties no longer exists and I am unable to perceive how, under such circumstances,

the relation can be established between the purchaser at the mortgage sale and the debtor. The purchaser pays his money to the master in chancery in exchange for a certificate of purchase, and the latter, after the payment of court costs, turns the money over to the mortgagee. I do not think it is material whether the purchaser is a third party or the mortgagee, the legal effect is the same. I only cite the former to show what, to my mind, is the folly of permitting a debtor to proceed under these circumstances. It seems to me the relation of debtor and creditor having been extinguished, that in itself forestalls the debtor in such proceedings. In the petitions herein, debtors list, among their secured creditors, those who were formerly their mortgagees, and treat such creditors the same as though no foreclosure proceedings had been had in face of the fact that such proceedings have been completed, and there remains to be performed by the holder of the certificate of purchase only the ministerial act of exchanging his certificate for a deed providing no redemption has been made as by law provided.

This court, in a similar proceeding, where a third party was the purchaser at a foreclosure sale, heard the unique argument made on behalf of a debtor that he owed a former mortgagee $12,000, which claim was resisted on the grounds that the mortgagee had his money, the debt had been satisfied, and the relation of debtor and creditor no longer existed.

Assuming the equity of redemption is a property right, that such right has been preserved to the debtor by virtue of the provisions of this act and the debtor is adjudicated a bankrupt under subdivision (s), how can such property right be administered in a way which will be of any benefit to the debtor? It seems we might arrive at a stage in the proceeding where this property right would be appraised and the debtor permitted to purchase something he had been the owner of from the beginning.

In Re Smith (D. C.) 9 F. Supp. page 277, on page 278 discussing a similar situation, the court said: "When the debtor's petition was filed, the property of the debtor that came into the hands of the court, if any, was that owned by the debtor at that time. The decree of foreclosure and appointment of a receiver having occurred prior to that time and a sale having been made, this court cannot undo that which had already been done by a court of competent jurisdiction, and

cannot, because of the exclusive jurisdiction of this court over the debtor and his property, set aside or pass in review upon any orders, judgments, or decrees of courts of record made prior to the time such jurisdiction was conferred upon this court. * * * This court cannot change the lien as adjudicated, as that has already been determined by the state court. To do so would interfere with the full faith and credit clause of the Constitution of the United States (article 4, § 1). Cooper v. Newell, 173 U. S. [555] 567, 19 S. Ct. 506, 43 L. Ed. 808."

In Re Smith (D. C.) 7 F. Supp. 863, on page 864, the court in discussing subdivision (o) of section 75, 11 USCA § 203 (o), said: "Congress has not vested in the court of bankruptcy any right to sit as a court of review of a final judgment obtained in a state court fixing property rights. It is vested with jurisdiction to stay suits brought to recover dischargeable debts and to stay proceedings upon judgments obtained within four months prior to the filing of petition to recover dischargeable debts, but it has no jurisdiction to review or stay a judgment of a state court having jurisdiction of the parties, which fixes title or right to possession of real estate. The judgment having been entered prior to the filing of the petition herein, this court is powerless to take any steps with regard to property affected thereby."

There are a number of cases construing somewhat similar language in section 74 of the Bankruptcy Act, as amended (11 USCA § 202), and while they are not entirely analogous to the situation here, yet they throw considerable light on the question presented.

In Molina v. Murphy et al., 71 F.(2d) 605, the Circuit Court of Appeals held the District Court was without jurisdiction to enjoin the foreclosure proceeding. It seems the opinion in this case rested largely on the fact that the debtor was not in the possession of the property at the time his petition was filed under section 74, as amended (11 USCA § 202), the possession having been previously acquired by the receiver of the court in which the mortgage foreclosure proceeding was held.

In Santos et al. v. Moreda (C. C. A.) 71 F.(2d) 608, on page 609, the court said: "If the property constituting the security was in the actual or constructive possession of the debtor, the only material question open in this case is whether Manuela de

Gil (the real party in interest enjoined) was a secured creditor. If she was not, the District Court was without jurisdiction to grant the injunction. This question the District Judge did not pass upon, believing it was unnecessary to his authority. In this he was mistaken."

In Re Landquist (C. C. A. 7th Cir.) 70 F. (2d) 929, is a case where the District Court had restrained the prosecution of foreclosure proceedings instituted in the state court where a receiver had been appointed more than four months prior to the filing of debtor's petition under section 74 (11 USCA § 202). The court on page 936 of 70 F.(2d) said: "It might be contended that, aside from the security, the bankruptcy court under section 74 is authorized to consider the extension of the due date of the debt. There are at least two reasons why that position is not tenable. First, the extension of the due date would defeat the jurisdiction of the state court and the right of the receiver to possession, because the fact that the debt is past due is sine qua non of that court's jurisdiction, and that fact has been adjudicated by the state court. * * * The only right which Appellee now has in the security is that of redemption. To hold otherwise, we think would extend the application of section 74 much further than was contemplated by Congress."

As I have heretofore indicated, to permit a debtor to proceed under subdivision (s) with only the naked legal title and the statutory right of redemption would be an idle, futile, and useless ceremony which could not be productive of any benefit either to the debtor or his creditors, and least of all to the debtor himself. To hold that a debtor who has nothing but the right of redemption can proceed under this subdivision, the same as he could had there been no foreclosure proceedings in and sale of the property by the state court, have the land appraised and the right to purchase it in the manner provided in this subdivision is to entirely ignore the final court decree of the state court, and results in setting aside and holding for naught such final decree and judgment wherein the rights of the parties have been litigated and made definite and certain. While the provision of the Constitution confers upon Congress broad powers with reference to bankruptcy legislation, yet I am unable to believe that Congress has such power and, moreover, I do not believe Congress, by this legislation, intended to exercise any such power. There is no language in subdivision (o) or the act conferring benefits upon one who owns merely the equity of redemption and no language clothing this court with authority to nullify final judgments or decrees of other courts. If such a construction is to be placed upon section 75, in my opinion it would be clearly violative of section 1 of article 4 of the Federal Constitution, which provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."

In Cooper v. Newell, 173 U. S. 555, on page 567, 19 S. Ct. 506, 510, 43 L. Ed. 808, the court said: "And the courts of the United States are bound to give to the judgments of the state courts the same faith and credit that the courts of one state are bound to give to the judgments of the courts of her sister states." In Bradford Electric Light Co., Inc., v. Clapper, 286 U. S. 145, on page 155, 52 S. Ct. 571, 574, 76 L. Ed. 1026, 82 A. L. R. 696, the court said: "That a statute is a 'public act' within the meaning of that clause is settled. [Citing many cases.] A federal court sitting in New Hampshire is bound equally with courts of the state to observe the command of the full faith and credit clause, where applicable." To construe this act as debtors contend, not only results in violation of a solemn and final court decree of the state of Illinois, but effectively nullifies the statutory provision which fixes the rights of both the purchaser at a foreclosure sale and the owner of the equity of redemption. It is my conclusion that such period of redemption cannot, by this court, be stayed or extended. In American Mine Equipment Co. v. Illinois Coal Corporation (C. C. A. 7th Cir.) 31 F.(2d) 507, on page 510, in discussing the Illinois statute which makes provision for redemption from sale of real estate, the court said: "Statutes providing for redemption from judicial sales constitute a rule of property in their respective states, and are binding upon courts of chancery as well as law, and will be given effect in the federal courts. Brine v. Ins. Co., 96 U. S. 627, 24 L. Ed. 858." In Handlan v. Walker (C. C. A.) 200 F. 566, on page 568, the court said: "The rule as to the conclusiveness of an adjudication when the same matter again comes up between the same parties is too familiar to require much restatement. It covers questions of both law and fact upon which their rights depend, and those which might have been determined as well as those which were. Werlein v. New Orleans, 177 U. S. 390, 398, 20 S. Ct. 682, 44 L. Ed. 817." In Garber v. Bankers Mortgage Co., et al. (D. C.) 27 F.

(2d) 609, on page 612, the court said: "The right to redeem is lost, however, if not exercised, in the time provided by statute. Bankruptcy does not extend the period of redemption. It could not prolong the period, for the purchaser at the sale, not a party to the bankruptcy, has a vested right in the matter. In re Goldman (D. C.) 102 F. 122."

In view of what I have heretofore said, debtor's petitions will be dismissed. First, for the reason there has been no valid compliance by the debtors with the original part of section 75; and, second, they have no interest in the land in question which could be administered under subdivision (s). Request has been made by the debtors that the cause be re-referred to the conciliation commissioner for further proceedings and negotiations, and while I do not doubt but what it is discretionary with the court to permit such re-reference in a proper case, in view of the facts presented and the views above expressed, I do not believe any useful purpose could be served by permitting such request, and the same is denied. It naturally follows the restraining order heretofore issued is dissolved. An order may be prepared by counsel for the creditors, preserving petitioner's exception to such order, submitted to opposing counsel and presented.