In re YOUNG.

No. 5431.

District Court, S. D. Illinois, N. D.
Oct. 21, 1935.

Ira J. Covey, Wayne H. Mathis, and Ira J. Covey, Jr., all of Peoria, Ill., for debtor.

B. M. Chiperfield, Claude E. Chiperfield, and Robert B. Chiperfield, all of Canton, Ill., for objecting creditors.

Before BRIGGLE and MAJOR, District Judges.

PER CURIAM.

On September 4, 1934, William W. Young, hereinafter referred to as the debtor, filed his petition herein, under section 75 of the Bankruptcy Act, as amended (11 USCA § 203), alleging that he is a farmer and primarily engaged in farming operations, that he is insolvent and unable to meet his debts as they mature, and averring that he desires to effect a composition or extension of time to pay his debts under the terms of said section. Attached to said petition are his schedules of assets and liabilities, showing a total indebtedness of $16,688.38 and total assets of the value of $10,318.

He says in his petition that the farm in question, on which he places a value of $10,000, is encumbered by a first lien in the principal amount of $10,000 and a second lien in excess of $7,000, and that said first lien was at the time of filing his petition herein in the process of foreclosure; that decree for foreclosure had been entered on May 22, 1934, by the circuit court of Fulton county, Ill.; that said premises were sold under such decree on June 28, 1934, to J. W. Chapman and others, the holders of the notes secured by said lien, and hereinafter referred to as the objectors. A deficiency decree was rendered against the debtor and a receiver appointed by the state court, who qualified and assumed control over the property in question.

On September 4, 1934, debtor's petition was approved by this court as properly filed and was referred to the conciliation commissioner of this court for Fulton county, and on the same date upon petition of the debtor an order was entered restraining further proceedings in said foreclosure suit until debtor's petition be disposed of and restraining various persons

from interfering with the possession of said real estate by the debtor.

The matter was duly heard by the conciliation commissioner, and on November 2, 1934, the report of the conciliation commissioner was filed herein, showing a failure of composition.

On November 22, 1934, debtor filed his amended petition under the provisions of the then existing subsection (s) of said section 75 (as added by Act June 28, 1934), asking that he be adjudicated a bankrupt under the terms of subsection (s), and he was, thereafter, duly adjudicated a bankrupt and the cause was referred to one of the referees in bankruptcy of this court. The referee proceeded with the administration of the debtor's estate, and a trustee was duly appointed and qualified and was so acting when the Supreme Court held such subsection (s) unconstitutional.

Thereafter, on June 4, 1935, the objectors appeared specially herein and filed their motion before the referee, asking that the proceedings be dismissed in so far as the referee had assumed jurisdiction over the real estate in question, as such subsection (s) was in violation of the Fifth Amendment to the Constitution. This motion was allowed by the referee, who entered an order finding that on account of subsection (s) having been held unconstitutional by the Supreme Court, he no longer had jurisdiction over the said real estate; and such jurisdiction as he had assumed was relinquished and remanded to the circuit court of Fulton county, Ill.

On August 28, 1935, the present subsection (s), 11 USCA § 203 (s), became a law, and thereafter on September 9, 1935, the debtor filed his petition herein, alleging the various steps heretofore taken, and praying that the order of the referee, remanding the jurisdiction over said real estate to the circuit court of Fulton county, be set aside and that this court reassume exclusive jurisdiction over said real estate and that the debtor be granted the relief provided for in said amendment of August 28, 1935.

To this petition the objectors, by their special appearance, interpose various constitutional objections, and ask that this court decline further to assume jurisdiction under the petition of September 9, 1935, and that the same be dismissed. This inquiry will be limited, in the main, to a determination of whether the new subsection (s) meets the test imposed by the Supreme Court's decision in Louisville Joint Stock Land Bank v. Radford, 295 U. S. 555, 55 S. Ct. 854, 79 L. Ed. ——, 97 A. L. R. 1106, opinion May 27, 1935.

In that case the court concluded that the original subsection (s) of section 75 of the Bankruptcy Act, which it there had under consideration, had taken from the mortgagee bank the following property rights recognized by the law of Kentucky:

1. The right to retain the lien until the indebtedness thereby secured is paid.

2. The right to realize upon the security by a judicial public sale.

3. The right to determine when such sale shall be held, subject only to the discretion of the court.

4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a paid competitive sale or by taking the property itself.

5. The right to control, meanwhile, the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

It may be observed that the property rights of a mortgagee in Kentucky, there referred to, are likewise accorded a mortgagee under the law of Illinois. Succinctly, therefore, the question is: Are any of such property rights of the mortgagees, in the instant case, now threatened by the operation of the new subsection (s)? It is argued with plausibility that the first, second, and fourth of such property rights have by the terms of the new act been accorded the mortgagee. It is also contended that the third—the right to determine *when* a judicial sale of the mortgaged property shall be held, subject only to the discretion of the court—is now accorded the mortgagee by virtue of the provisions of paragraph 3 of new subsection (s), 11 USCA § 203 (s) (3). This paragraph provides that: "At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: Provided, That upon request of any secured or unsecured creditor, or up-

on request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor: Provided, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold of such sale * * *."

It is argued by the debtor that the second proviso of this paragraph gives the mortgagee the right to demand a sale of the mortgaged premises *at any time* after the court takes jurisdiction and therefore meets the constitutional objections pointed out by the Supreme Court in the Radford Case. With this reasoning we are not in accord. To place such a construction on the language of paragraph 3 would do violence to the whole purpose of the act. Neither do we think that the congressional debates on the subject lend support to any such theory. While the language of the act is inapt and uncertain, it undoubtedly was the purpose of Congress to give the secured creditor the right to demand a public sale of the mortgaged property only when the preceding provisions had expended their force. If and when the debtor might evidence a purpose to pay into court the appraised price of the land, then and then only the secured creditor might, if he saw fit, ask for a new appraisement with the further proviso that he might, if he should so elect, demand a public sale. We think, as a matter of construction of the act, that the *time* of such sale is in no way dependent upon the wish of the secured creditor, but must await the time during the three-year period when the debtor shall choose to act. Surely Congress, in its attempt at relief of the distressed farmer, did not intend to bring about the anomalous result of reducing his redemption period from twelve months (in Illinois) to ninety days. If the construction contended for by the debtor should prevail, then the debtor himself might urge with some plausibility the unconstitutionality of the act in abridging his statutory period of redemption.

We pass to the fifth property right which the Supreme Court said in the Radford Case was taken from the mortgagee —the right after default to control the mortgaged property subject to the discretion of the court and to have the rents and profits collected by a receiver and applied on the mortgage debt—and again it is suggested by the debtor that this property right remains intact because of the provisions referred to giving the creditor the right to demand a sale of the mortgaged property. This contention is again bottomed upon the erroneous assumption, as we believe, that such right may be exercised at *any time* upon request of the secured creditor.

It is mandatory under the provisions of paragraph 2 of subsection (s) as amended, 11 USCA § 203 (s) (2), (upon the debtor's compliance with preceding conditions) that: "The court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannually for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings." (It is assumed that Congress means that the "semiannual" method of rent payment is to begin after the first year.) Experience teaches that in most foreclosure cases default has existed at least two or three years before the foreclosure is begun and in most cases the mortgagee has received no interest for two or three years and has paid the taxes on the mortgaged premises (usually occupied by the debtor), for a like period before the debtor has sought to avail himself of the provisions of the act in question. Thus it will be seen that when the bankruptcy court restores the debtor to possession of his mortgaged premises a further period of at least one year must elapse before the debtor can be required to make any payment for the use of the property. The creditor, or, if you please, the court, has nothing during this period

except the unsecured promise of a bankrupt that he will pay at the end of the year. This is not the equivalent of a bonded receiver acting under the control and direction of the court. Louisville Joint Stock Land Bank v. Radford, supra. Such rental, if and when paid, is to be used first in the payment of taxes and upkeep of the property, an obligation already assumed by the mortgagor under the terms of his trust deed in this case, and the breach of which constituted one of the defaults underlying the foreclosure.

We conclude, therefore, that the act in question destroys the right of the mortgagee to determine when a sale of the mortgaged premises may be had, subject only to the discretion of the court; and destroys the right during default to control the property subject to the discretion of the court and to have the rents and profits collected by a receiver for the satisfaction of the debt. These are property rights acquired by the mortgagee and cannot be taken from him without due process of law. The method attempted is not due process. Even the bankruptcy power of Congress must yield to the Fifth Amendment in this respect as pointed out in the Radford Case.

Under the facts in the case before the court, the objectors are also deprived of property rights, recognized by the law of the state of Illinois other than those mentioned in the Radford Case.

Section 16, chapter 77, Smith-Hurd Ann. St., provides as follows: "When any real estate is sold by virtue of an execution, judgment, or decree of foreclosure of mortgage, * * * it shall be the duty of the sheriff, master in chancery or other officer, except as otherwise in this Act provided, instead of executing a deed for the premises sold, to give to the purchaser a certificate describing the premises purchased by him, showing the amount paid therefor, or if purchased by the person in whose favor the execution is taken or the decree is entered, the amount of his bid, the time when the purchaser will be entitled to a deed, unless the premises shall be redeemed, as provided in this Act."

Section 17 of said chapter provides that the officer making such sale shall record such certificate in the office of the recorder of the county in which the property is situated.

Section 18 of said chapter provides that the debtor may, within twelve months from said sale, redeem the real estate so sold by paying to the purchaser the sum of money for which the premises were so sold.

Section 20 provides if such redemption is not made, any decree or judgment creditor may, after the expiration of twelve months and within fifteen months after the sale, redeem the premises and defines the manner in which such redemption may be made.

This court, in the case of In re Borgelt, 10 F. Supp. 113, had occasion to consider the rights and interest of a mortgagor and mortgagee after a decree of foreclosure and sale had been had, and commencing on page 118 of 10 F. Supp. may be found the conclusion there reached. Inasmuch as that conclusion has, in the judgment of the court, a direct bearing upon the question presented, we have again carefully considered what was said there, but see no reason to change or modify the views therein expressed. It would serve no useful purpose to repeat what was there said or quote from the authorities there cited. It is sufficient to note that in construing subsection (s), section 75 of the Bankruptcy Act, afterwards declared unconstitutional, we found the act, as it then existed, effectively nullified the decree of the state court, as well as the statutory provisions, fixing the rights of both the purchaser at a foreclosure sale and the owner of the equity of redemption.

Precisely the same question is presented in the instant case in construing the Bankruptcy Act as amended August 28, 1935. In the case before the court there was a sale of the mortgaged premises on June 28, 1934, by virtue of a decree of the circuit court of Fulton county, Ill., and on July 2, 1934, a report of said sale was approved by said court. The mortgagees in that proceeding (the objectors here) were the purchasers at said sale and had issued to them, in accordance with the Illinois law, a certificate of purchase. The mortgagor (here referred to as the debtor), by reason of the Illinois statute, had twelve months in which to redeem from said sale, and following the expiration of that time, other decree or judgment creditors had three months in which to redeem. In accordance with our conclusion in Re Borgelt, supra, the proceedings in the state court above referred to were final and complete; the holder of the certificate of purchase became vested under the Illinois law with a definite property right, and while it

does not appear from the record in this case whether there were other judgment creditors, it may be added, if such there be, they likewise became vested with a definite property right. In other words, the rights of all interested parties became fixed and vested by the terms of a final court decree of the state of Illinois in connection with statutory provisions heretofore referred to.

It is here urged that by the legislation in question, Congress merely extended the period of redemption and that this affects only the remedy and not the substantive rights of the parties. In support of this contention, the case of Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, is relied upon. Without going into a discussion of the opinion in that case, it holds, as we understand, that the state has a right to lodge in its courts a certain discretion with reference to extending the redemption period provided by the state. This is quite different, of course, from saying that Congress has the right, under its bankruptcy powers, to extend the redemption period fixed by the state or to extinguish it entirely and in its place set up a new redemption period of its own making. If an extension of existing rights is provided, it would necessarily follow that at some period the holder of the certificate of purchase could present his certificate and receive a deed for the property, provided, of course, no redemption had been had in the meantime, but no place in the act is any such provision to be found. In other words, the holder of the certificate of purchase is deprived of property rights which he acquired when such certificate was issued to him. In the instant case, the mortgagee in a proper court proceeding caused the mortgaged property to be sold for the purpose of satisfying the debt, and now the most he could hope for is that at some future time he might again have the same property sold to again satisfy the same debt. In addition, other judgment creditors, if such there be, are deprived of their right to redeem, as there is likewise no provision in the act under consideration for such redemption. So it is our conclusion that in addition to the property rights mentioned in the Radford Case, the objectors here would be deprived of definite rights acquired by virtue of the foreclosure proceedings in the state court and the statute of the state.

It is also urged upon the court that the act violates section 1, article 4 of the Constitution of the United States, which provides as follows: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." This provision, on the facts before us, has a very intimate connection with the due process clause of the Constitution. The authorities are so numerous and the rule so firmly established that this provision is binding upon federal courts, as well as state courts, that it would be useless to cite authorities in support of the same. We have already discussed the effect which this legislation would have upon a final court decree, as well as the statutory provisions of the state in depriving the objectors of property rights fixed by such decree and statute. If we are correct in the conclusion thus reached, it logically follows that the constitutional provision last referred to is also contravened by the legislation in question.

Other questions raised by the objectors are passed, not for the reason that we deem them without merit, but for the reason that those discussed appear to us plain and controlling.

Many cases similar to the instant one are pending in this district, and for the sake of a speedy determination of the questions involved and in the hope of uniformity, the two judges of the district have heard this case jointly. Opportunity has been given for argument and briefs not only by the attorneys of record herein, but by others interested on both sides of the question here involved. Both judges of the district are in accord in the views here expressed.

The prayer of debtor's petition of September 9, 1935, is denied, and the same dismissed.