Nina A. Pool, Appellant, v. Paul V. Rutherford et al., Defendants. Paul V. Rutherford, Appellee.
Paul V. Rutherford, Appellee, v. Nina A. Pool, Appellant.

Gen. No. 9,633.

Opinion filed February 28, 1949. Re-leased for publication March 28, 1949.

DALBEY & FOREMAN, of Danville, for appellant; EVERETT L. DALBEY, of Danville, of counsel.

ACTON, ACTON, BALDWIN & BOOKWALTER, of Danville, for appellee; W. M. ACTON and HARVEY H. ACTON, of Danville, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Sarah E. Jones died in 1926, leaving a last will and testament which was duly admitted to probate, by the terms of which certain real estate, located in Vermilion county, Illinois, was conveyed to Nina A. Pool, the plaintiff herein, as trustee, for the period of 25 years, with power to rent the property, collect the rents thereof, keep the same repaired, and to pay the taxes and insurance thereon. The trustee was to pay the net income annually to the testatrix' grandson, Harry K. Jones. It was further provided that if he (Harry K.

Jones) should die before said 25 years, "said trust shall cease and terminate at his death, and said trustee shall, thereupon convey the said real estate to the said Madelon Rutherford and Dorothy Pool, in fee simple." The will further provided that on termination of the trust, the trustee should have a reasonable time to wind up and settle the trust business. Nina A. Pool qualified and served as said trustee.

On January 5, 1945, Harry K. Jones died.

On June 13, 1945, Nina A. Pool, as such trustee, executed a deed to said Madelon Rutherford Torres and Dorothy Pool Marker. Said deed recited the death of said life tenant, Harry K. Jones, and provided further, "and the real estate hereinafter described has vested in Madelon Rutherford . . . ." Said deed also provided that it was "subject to all taxes, assessments, encumbrances, leases, and charges now outstanding, if any."

On August 29, 1945, said Madelon Rutherford Torres sold her undivided one-half interest in said property to the defendant, Paul V. Rutherford, for the sum of $5,000. This deed was recorded in Vermilion county on December 7, 1945.

For many years prior to 1945, the trustee had rented the property on shares to a tenant, and had collected the landlord's half of the proceeds from the grain company.

On October 23, 1945, said Nina A. Pool collected the landlord's share of said crop, for the year 1945, from the grain company. On December 7, 1945, the defendant, Paul V. Rutherford, being the owner of an undivided one-half of the fee, demanded one-half of the landlord's share of said crops from the grain company, but was advised that they had already paid Nina A. Pool. Thereupon, Paul V. Rutherford demanded said money from said Nina A. Pool.

On January 6, 1946, said Nina A. Pool filed in the recorder's office of Vermilion county, Illinois, a claim

for lien against said real estate, for certain monies that had been expended by her, as trustee, in the administration of said trust.

This action was commenced in the circuit court of Vermilion county, to foreclose said lien. The defendant, Paul V. Rutherford, filed a counterclaim against the plaintiff to recover against her one-half of the landlord's share of said crop, which she had collected from the grain company.

The chancellor entered a decree, decreeing that the plaintiff take nothing, and that the defendant, Paul V. Rutherford, have judgment, on his counterclaim, against the plaintiff, in an amount equal to one-half of the landlord's share of said crops. Plaintiff has appealed from said decree to this court.

Two legal propositions are presented.

*First:* Is defendant entitled to one-half the landlord's share of the crops produced on said land during the year 1945?

*Second:* Does plaintiff have a lien for monies expended by her in the administration of said trust, which can be enforced against this defendant?

By its terms this trust ceased on the death of the life tenant, Harry K. Jones. He died on January 5, 1945. This trust ceased at that time. Plaintiff's title, as trustee, ceased at that time. Her rights to manage and control the trust property ceased at that time, and her rights to collect the rents from said trust property ceased at that time. By the terms of the trust instrument, she was given a reasonable time to wind up and settle the trust business, but this provision does not authorize her to enter into new leases for years following the termination of the trust, but is merely a provision for time for terminating what has theretofore been done. Plaintiff herself recognized that the title had passed, as shown by her deed, in which she conveys the property to the remaindermen, Madelon Rutherford Torres and Dorothy Pool Marker,

in which she stated, "WHEREAS said Harry K. Jones died before the expiration of 25 years from the date of the death of said Sarah E. Jones, namely, viz: on the 5th day of January, 1945, and in consequence thereof, the trust created by Paragraph Seventh of the will of said Sarah E. Jones, deceased, ceased and terminated, and the real estate hereinafter described vested in Madelon Rutherford, now known as Madelon Rutherford Torres, and Dorothy Pool, now known as Dorothy Pool Marker; . . . ."

Therefore, plaintiff had no title to the property after January 5, 1945, and therefore, no interest in the crops grown on said real estate during the year 1945.

█ The title to growing crops passes to the purchaser as a part of the land. *Firebaugh v. Divan*, 207 Ill. 287; *Chicago Joint Stock Land Bank v. McCambridge*, 343 Ill. 456; *Damery v. Ferguson*, 48 Ill. App. 224.

This point was squarely decided in the case of *Firebaugh v. Divan, supra,* by our Supreme Court in 1904, in which the Supreme Court said on page 289 of its opinion:

"The law of this State is well settled that, as between vendor and vendee, growing crops produced by annual planting and cultivation are real estate, and pass to the vendee unless they are reserved in the deed or by other writing executed simultaneously with the deed."

And at page 290:

"A deed, when delivered, transfers to the grantee all the interest of the grantor in the land not reserved and entitles the grantee to possession. The title to the crops then standing upon the land, not severed from the soil, whether ripe or unripe, passes to the vendee as a part of the land."

The Supreme Court reaffirmed this position again in *Chicago Joint Stock Land Bank v. McCambridge, supra,* and stated on page 460 of the decision:

"The general rule of the common law is that growing crops form a part of the real estate to which they are attached and follow the title thereto."

This rule was also recognized by this court in the case of *Damery v. Ferguson, supra,* and the following appears on page 228 of the opinion:

"When the parties occupy the position of vendor and vendee the rule is well established in Illinois that growing crops unsevered from the soil are real estate and pass to the vendee by the deed, unless reserved in the deed."

The defendant, Paul V. Rutherford, as the legal owner of an undivided one-half of the property, was entitled to one-half of the landlord's share of the crops grown during the year 1945, and the chancellor was correct in entering in his favor a judgment, on the counterclaim, for one-half of the amount of the landlord's share of the crops, which had been paid by the grain company to the plaintiff.

This proposition does not appear to be seriously disputed by the plaintiff, but she claims that she has a lien on the real estate for monies expended by her for the benefit of the trust while she was trustee. It must be kept in mind that the defendant is a bona fide purchaser for value without notice, and is not a beneficiary of the trust, or one for whose benefit the monies were expended by the trustee. Plaintiff alleges that defendant had notice, but this question will be discussed later.

Ordinarily, a trustee is entitled to be reimbursed from the trust estate for the reasonable expenses expended by him for the benefit of the trust, and is entitled to a lien upon the trust property to reimburse himself for the reasonable expenses advanced by him. However, this trustee has conveyed away the property, and now seeks to enforce the lien against a bona fide purchaser for value without notice.

■ The most that could be claimed for the trustee is that her lien is in the nature of an equitable interest in the trust property, but equitable interests are cut off by transfers to bona fide purchasers for value without notice.

*Bogert,* in *Trusts and Trustees,* states on page 160, section 31:

"The equitable interests of both cestui and charge beneficiary are naturally subject to the bona fide purchaser rule and may be cut off by a transfer of the legal estate to one who does not know of the trust or charge and pays value."

And on page 166:

"Naturally equitable liens and trusts are alike in the application of the bona fide purchaser rule to them. Both the interest of the equitable lienor and cestui are cut off by a transfer of the legal estate to a bona fide purchaser."

The plaintiff contends that defendant is not a bona fide purchaser for value without notice, because he had notice of the fact that the property was conveyed to his grantor by a trustee.

Let us look at the facts again.

■■ On June 13, 1945, the plaintiff, as trustee, conveyed this property to Madelon Rutherford Torres by a deed, which provided as follows: "subject to all taxes, assessments, encumbrances, leases and charges now outstanding, *if any."* (Italics ours.) Plaintiff contends that the words, "encumbrances and charges," should have been sufficient to put defendant on inquiry so that he would have discovered plaintiff's claim for lien. With this we cannot agree. If plaintiff claimed a lien at this time, why did she convey away the property? If plaintiff claimed a lien at this time, why did she use the words, "if any?" The claim for lien appears to be an afterthought on the part of the plaintiff. Plaintiff apparently relied upon her collection of the

money for the landlord's share of the crops as a protection against her right to reimbursements for the monies which she had advanced. When defendant learned of the fact that she had collected these monies, he demanded that his half of the landlord's share be paid to him. Plaintiff thereupon realized that she would not be able to retain this money, and for the first time filed the claim for lien. If she had intended to claim the lien prior to the time that defendant purchased the property, why did she not record her claim for lien at that time? She filed the claim for lien on January 6, 1946. Why did she not file the claim for lien on June 13, 1945, when she conveyed away the property, if she intended to retain any kind of interest in it? Furthermore, the language used in the deed is normal and customary language, and the words, "charges and encumbrances" must be read in connection with the other words with which they are employed, to wit, "taxes and assessments," and the rule of ejusdem generis applied. The words "encumbrances and charges" must be held to mean liens of a nature of the words with which they are used, to wit, "taxes and assessments." It must be remembered that the plaintiff was conveying, as a trustee. She was receiving no money for her deed. She inserted in the deed everything to which the property might possibly be subject.

The defendant paid $5,000 in cash, in reliance upon the record title. Plaintiff had within her power to apprise any purchaser of her claim prior to the time of his purchase, by filing a claim for lien, as she did subsequently, and as between these two persons it is only fair and equitable that plaintiff should bear the loss. Furthermore, the big dispute in this case is over the action of the chancellor in cutting down the attorney's fees which plaintiff had advanced, and which, she claims, were for the benefit of the trust. Plaintiff had been involved in certain litigation with

Harry K. Jones, the life tenant. Part of the litigation concerned the trust, and part of it was a personal affair between the two of them. The attorney's fees were divided by the attorney, a certain amount being charged to her personally and the balance to her as trustee. These facts were testified to and it was sought to charge the trust for the balance billed to her as trustee. The chancellor reduced considerably the amount which he allowed as a charge against the trust estate, and held that since the amount collected by her was in excess of any amount lawfully due her as trustee, that she should take nothing. We will rely on the chancellor's decision. He saw the witnesses and heard their testimony, and his finding should not be disturbed, unless it is against the manifest weight of the evidence. He was not bound to accept the testimony of any witness, with reference to the reasonable value of the attorney's fees, but might fix, from his own experience, what he knew to be a fair and reasonable fee for the services rendered.

The decree of the circuit court of Vermilion county is affirmed.

*Affirmed.*